## AUSTIN TERM, 1869.

### J. P. McARTHUR AND OTHERS v. ELIZABETH HENRY AND OTHERS.

1. Disputed boundary lines may be settled by parol agreements or by long acquiescence of the parties concerned ; and the courts will not disturb such settlements, but will encourage them as a means of suppressing vexatious litigation, and of banishing from peaceful communities a fruitful source of discord.    Such settlements are obligatory upon the heirs of the parties concerned, although they were minors at the time.

2. The fact that contiguous proprietors derive their titles from the same source imparts additional force to the doctrine that their dividing line may be established by parol agreement between them, or by their acquiescence in it, whether it was the true line or not.    (In the present case no parol agreement between the parties was proved, and the acquiescence proved could only have endured three years or less ; but there was evidence that on one occasion the plaintiffs' ancestor pointed out to a witness a line different from that now claimed by the plaintiffs, and possibly the same line claimed by the defendants.)

APPEAL from Travis.    Tried below before the Hon. B. F. Carter.

51—XXXV

The report of this case should be read in connection with the subsequent ruling in it, reported in 34 Texas, 143; from which it will be seen that a motion for a rehearing was made, which, at the second subsequent term of this court, was dismissed upon grounds not involving the merits of the original opinion, now reported. At the time the report of the case for 34th Texas was prepared, the original opinion did not reach the hands of the Reporter; if it had, it would have been then reported in connection with the disposition of the case on the motion for a rehearing.

This suit was in form an action of trespass to try title, instituted in November, 1858. The real plaintiffs were James P., John T., and Mary E. McArthur, then minors, who sued by their guardians, James and Mary Doyle. The defendants were Elizabeth Henry, and her numerous children, some of whom were minors, for whom C. S. West, Esq., was appointed guardian *ad litem.* The plaintiffs claimed under N. McArthur, their deceased ancestor, whose title was prior in its origin to that of John D. Henry, the deceased ancestor of the defendants.

This priority of title, and a survey under the order of the court, constituted the substance of the case made by the plaintiffs.

· The defense ultimately hinged upon the legal effect of the declarations, acts, and acquiescence of the ancestors of the parties litigant; and as the opinion of this court treats only of these features of the case, there is no occasion to recapitulate any of the evidence, except such as is pertinent to them.

E. S. Berry, for the defendants, testified as follows: "I was overseer for, and in the employment of, McArthur in 1849, and part of 1850 I lived with McArthur. Some time in 1850 or 1851, I went with his

hands to cut some timber. McArthur pointed to a tree, and said to me, ' Do not cut beyond that tree ; it is my line.' The tree was marked. I looked from the tree in the direction of Henry's house, and saw that a line running from where we were, passing the tree, would clear Henry's house some distance. (Cross-examined.) I do not know what kind of a mark was on the tree— whether a surveyor's or some other. I did not examine it particularly ; I only saw it was marked. Never heard McArthur speak of the line between himself and Henry on any other occasion.

M. Walton, also for the defendants, testified as fol lows: "That he knew Henry, the ancestor of defend- ants, and McArthur, both, during their lifetime. Henry's house was commenced in 1849, and stands now where it stood then. His field was commenced about the same time. It stands now where it stood then, but has been added to since. McArthur died in 1851, and Henry died shortly after. Witness built Henry's improvements. These improvements, and the fence and field of Henry, that he had cleared, were all built with reference to the line claimed by Henry. McArthur never made any objection to the erection of Henry's improvements, to my knowledge. I saw Mc- Arthur at Henry's while the improvements were being made. The defendants are Henry's heirs. McArthur was a near neighbor of Henry; lived almost in sight of him. I do not know with certainty who ran the line claimed by Henry. I did not see it run, but have often seen the line itself. Henry's improvements are built with reference to it; it is a marked line. I saw the line and the marks, and have known its locality from the time of Henry's improvements to this date. The position of the line is known in the neighborhood, attention being called to it by the dispute as to the true

dividing line of the Sims league.    Henry died some time in 1853, I think.''

The survey and plat show that the line claimed by the defendants just reached their field, missing their house about seventy varas; while that claimed by the plaintiffs ran through the house yard of the defendants, barely missing the house itself, and cutting off the stable and the calf lot, and thence passing through the field.

As the instructions given and refused by the court below add significance to the disposition made of the case by this court, it is deemed well to insert them in full.

The following was the charge given by the court of its own motion :

"This is an action of trespass to try title, brought by the plaintiffs in the petition against the defendants therein named.    There is no controversy, however, as to the titles of the parties, each claiming under the same grantee from the sovereignty of the soil ; but the dispute is as to the true boundary line between their respective tracts of land.

"The general rules which are to be observed in ascertaining the locality, identity, or boundary of a particular tract of land described in a deed or grant, are well settled.    Recourse must be had, first, to natural objects ;  second, to artificial marks ;  and third, to course and distance.

"The acquiescence of the proprietors of adjoining lands, in a particular line, is a circumstance to which the jury may look in determining the true boundary.

" If the jury believe from the evidence that the boundary line between plaintiffs and defendants would give the disputed premises to plaintiffs, then they will find for plaintiffs.

"If, on the other hand, the jury believe from the evidence that said true boundary line would leave said disputed premises in defendants' tract of land, they will find for defendants.

"If the jury believe from the evidence that the dividing line between the lands of plaintiffs and defendants has been run, and that the parties, or those under whom they claim, have acquiesced in the same, and recognized the said dividing line, they will find for defendants."

The plaintiffs asked, but the court refused, the following:

"That the mere fact that McArthur did not actively object to Henry making his fence on his line would not be such acquiescence as to estop McArthur or his heirs to recover the land, unless this acquiescence was continued for ten years; or, in other words, that before a party can claim lands by occupation, without title, that this occupation must be for a space of ten years before suit brought.

"That by acquiescence is termed active and not passive acquiescence; or, McArthur must have done something showing that he did approve and did not object to Henry cultivating the land."

The following were given on the request of the defendants:

"That where there is a dispute between adjoining proprietors as to the true dividing line between them, that if one of such proprietors builds his fence and erects his improvements with reference to a particular line, contended for by him as the true line, and the other proprietor respects and acquiesces in said line, he is bound by such respect and acquiescence in said line; and his heirs cannot, after his death, dispute said line, and claim that it is somewhere else—and this, too, though it may not be the correct and proper line.

"And if in this case you believe that Henry placed his improvements with reference to the line claimed by him, and McArthur in his lifetime respected and acquiesced in said line, and allowed Henry, without objection, to place valuable improvements with reference to said line, McArthur and his heirs are bound by such respect and acquiescence of McArthur, and you will find for defendants."

There was a verdict for the defendants, judgment accordingly, and a new trial refused.

*Thos. E. Sneed,* for the appellants, after an able discussion of the case upon the title papers and the survey, turned his attention to the matters insisted upon by the defense, and proceeded as follows:—

The "lines" called for in those deeds mean real and not imaginary lines. Joseph Rowe, the vendor of defendants, calls into question the correctness of this line, and defendants in this suit seek to change this line and to move the line about sixty-seven and a half varas in an eastern direction, on the land of the plaintiffs, and to have the line established at a point where Rowe pointed out a line to the surveyors. How and upon what principle is this change of boundary sought to be accomplished? The only answer which can be urged by defendants is, that McArthur in his lifetime recognized the line now claimed by defendants, and acquiesced in that line as the division line between Henry and himself. When that line was run, by whom run, at whose instance or by whose authority run, is not shown. According to the surveyors' report, the marks on that line appeared to be from five to ten years old when the survey was made (fourteenth May, 1860). It does not appear that McArthur had any knowledge of the existence of that line. The only testimony offered to sustain

or establish this recognition and acquiescence by Mc-Arthur in the line claimed by defendants, is that of the witnesses Berry and Walton. Berry was employed by McArthur as an overseer in 1849. In 1850 or 1851, he went with McArthur's hands to cut timber. McArthur pointed to a tree and said to Berry, "Do not cut beyond that tree; it is my line." The tree was marked. Berry looked from the tree in the direction of Henry's house, and saw that a line running from where they (Berry and McArthur) were, passing the tree, would clear Henry's house some distance, etc.

The observations of the witness respecting the line pointed out were evidently casual, and therefore neither reliable nor satisfactory. It does not appear that the tree pointed out by McArthur was in the line claimed by defendants, nor does it appear that this tree was not in the line claimed by plaintiffs. McArthur did not tell this witness that the point, at which McArthur and the witness were when the tree was pointed out, was also in the line. Had McArthur done so, then the witness would have been able to determine how the line pointed out at the tree would run with reference to Henry's house; or, had some other object on the line been also pointed out by McArthur, then the witness from the two objects could have determined the direction of the line, and thus ascertain the locality of the line with reference to Henry's house. From knowing the single point on the line at the tree, the witness could not know how the line would run with reference to Henry's house, without also knowing the course of the line, and being aided by the use of a compass to indicate the line. The witness saw no other marked tree or object on the line pointed out. It is obvious that the statement of this witness about a line running from where he and McArthur were, when the tree was

pointed out, passing that tree, would clear Henry's house some distance, was not intended to convey the idea that McArthur intended, or did, in fact, point out any such line as his true line. But if McArthur had told the witness that the point where he and the witness were, when the tree was pointed out, was also in the line, still the line thus indicated is not inconsistent with the line claimed by plaintiffs. The surveyors' report and sketch No. 2, of the plat referred to in the report, shows that the line claimed by the plaintiffs does not include Henry's house, but runs some distance east of the house. It is believed that the testimony of Berry, instead of showing a recognition by McArthur, of the line claimed by defendants, when considered with reference to the surveyors' report, proves rather the contrary.

The other witness, Walton, neither shows a recognition by McArthur of the line claimed by defendants, nor an acquiescence in that line. He does not prove that any part of Henry's improvements was placed on the land now claimed by plaintiffs in the lifetime of McArthur. It is true that when the survey was made (fourteenth of May, 1860) some of Henry's improvements were over that line, but the survey was made nearly nine years after McArthur's death. The house and field of Henry were commenced in 1849, and they stood, at the time the witness testified, where they stood in 1849, but the field was added to after 1849. In what direction extended, and from what point extended, after 1849, does not appear. The meaning of the witness when he says, "Henry's improvements and fence and field were built with reference to the line claimed by Henry," is obscure; at least it would not be a fair interpretation of his testimony to say that he meant that the house and field of Henry were built to or upon

the line claimed by defendants, because that was not true, as shown by surveyors' report, of the relative position of Henry's house with reference to that line. The house of Henry was not even upon the land claimed by plaintiffs. If it can be said that the witness meant that Henry's field and fence were built up to the line claimed by defendants, in McArthur's limetime, with the same propriety it may be said he intended to speak of the house, for he said both house and field were built with reference to that line. Since the testimony, therefore, does not show satisfactorily that any part of Henry's improvements were placed on the land now claimed by the plaintiffs, in the lifetime of McArthur, the failure of McArthur to make objection to the erection of improvements by Henry cannot be said to be an assent to or acquiescence in the line claimed by defendants, on the part of McArthur.

But, admitting that Walton's testimony shows that McArthur acquiesced or tacitly consented to the line claimed by defendants (and, considered in the most favorable light in which it can be viewed for defendants, it does no more than this), there was not that character of acquiescence which would conclude the heirs of McArthur from disputing the correctness of that line. According to the testimony of Walton, Henry commenced his improvements in 1849. Henry's deed bears date December 3, 1849, and it is scarcely to be supposed that Henry began to improve before the date of the deed. McArthur died in November, 1851. This acquiescence, then, continued only during a period of less than two years. This is not such acquiescence as is recognized in the case of George v. Thomas (16 Texas R., 89) to be conclusive and binding upon a party and those claiming under him. In that case the boundary had been run nearly a quarter of a century before it was sought to be

disturbed, and some of the defendants had occupied up to the line during that time. It was in that case said: "These settlements of boundary are common, beneficial, approved and encouraged by courts, and ought not to be disturbed, though it was afterwards shown that they had been erroneously settled, if they have been acquiesced in for a number of years. * * * * The acquiescence of the parties under whom the plaintiffs claim for so great a lapse of time, under the circumstances, ought to bind them, if there were no evidence of the express assent and recognition of it by the plaintiffs' vendors." The principle thus recognized by this court is believed to have no application to the line claimed by the defendants; but had defendants instituted this suit to establish the line claimed by them, the plaintiffs might, with propriety, have invoked this principle, under the facts of this case, as applicable to their line. If this principle of acquiescence is held to apply to defendants' line under the facts of this case, it is not perceived why it should not apply to every case of naked adverse possession of land, where the party in possession erects improvements on the land and the real owner does not make objection. Carried to this extent, it would, in effect, be to adopt a new rule of limitation, shorter in time and less difficult of proof than any now fixed by law.

The only legal effect on the rights of the parties which McArthur's failure to make objection to Henry's improving over the McArthur line would produce, would be to make McArthur, or those claiming under him, liable for the value of such improvements.

The last instruction of the court to the jury in the charge in chief, when applied to the facts of this case, is believed to be erroneous. It is impossible to determine whether the judge referred to the line claimed by

plaintiffs, or that claimed by defendants, in that charge. If the jury found that either line had been run, and had been recognized and acquiesced in by the parties, or those under whom they claimed, they were directed to find for the defendants. This charge, considered with reference to the testimony, was tantamount to an absolute and unqualified direction to the jury to find for the defendants. That such was intended is not supposed, but that such was the effect cannot be very well denied.

The instruction asked by defendants' counsel, whether, as an abstract proposition, correct or not, is believed to be calculated to mislead the jury, and not warranted by the evidence. That instruction was based upon a hypothesis which had no real or substantial existence in this case; for that instruction assumes that there was testimony before the jury at least tending to prove, first, that there had been a dispute between Henry and McArthur as to their division line; second, that Henry, in McArthur's lifetime, had possession of the land embraced between the lines claimed by the parties respectively; third, that McArthur permitted Henry to erect valuable improvements upon that land without objection; and fourth, that McArthur respected and acquiesced in the line claimed by Henry. How far that assumption was justified, on the part of the judge giving that instruction, this court, from the testimony, can determine. The effect of that instruction upon the verdict was decisive. It is believed that these two instructions, the last in the charge in chief, and that asked by counsel for defendants, are totally inapplicable to the defense as made out by the evidence.

*Hancock & West*, for the appellees, filed an exhaustive argument upon the entire case. The following is

but a portion of their reply to the main positions taken by the appellants.

The last two clauses of the charge are objected to by the appellant, not as being incorrect in point of law, but as obscure; but a careful perusal of these two concluding paragraphs, with the issue as to the dividing line between the parties kept in view, will, we think, satisfy the court that the charge was neither obscure nor unfair. When it is remembered that at the time and place when and where this charge was delivered, as appears from the statement of facts, evidence had just been heard by the jury as to the acquiescence of appellants' ancestor in the red dotted line, or Henry line, and when it further appeared that there was no evidence introduced on the question of recognition or acquiescence by McArthur, as to either the Upshur or Mitchell line, the charge, it will be perceived, could neither confuse nor mislead the jury; nor will it, we believe, be contended that there is any flagrant violation of law in the charge. On the contrary, it seems to be a guarded statement of a series of legal propositions, which the appellants practically admit to be correct, and which cannot be said to be inapplicable to the case at bar.

The instructions asked by appellants' counsel below, which are only two in number, were both refused, and no doubt correctly. They were neither of them correct as legal propositions; and the counsel, in his brief, makes no defense of the propositions contained in them. They are, however, instructive in furnishing evidence, in addition to that contained in the charge of the court and the statement of facts, as to the only issue below being as to the acquiescence of McArthur in the red dotted or Henry line. In these instructions the following expressions occur:

"The mere fact that McArthur did not actively object to Henry making the fence on his (Henry's) line," etc. "By acquiescence is termed active, and not passive acquiescence, or McArthur must have done something. * * * He did not object to Henry's cultivating the land."

These instructions leave no sort of doubt as to what was the true issue below, and they proceed upon the following hypothesis:

1. That Henry's fence was built on Henry's line, or the line claimed by him.

2. That McArthur was aware of that fact, and did not object to its erection, or to his cultivation of the field.

Passing, then, from the instructions of appellants, let us consider those asked by appellees, and given by the court. Were they correct and applicable to the issues before the court?

These instructions are believed to lay down the law correctly. It is not deemed necessary to cite authorities at this point in support of their soundness. It is worthy of remark, however, that these instructions, like those of the appellants, and like the charge of the court, submit the same and sole issue to the jury as to the acquiescence of McArthur in the red dotted or Henry line. The last instruction on that point uses the following language: "If you believe that Henry placed the improvements with reference to the line claimed by him, and McArthur, in his lifetime, acquiesced in and respected that line, and allowed Henry, without objection, to place valuable improvements with reference to said line, McArthur and his heirs are bound," etc.

It will thus be seen, while the issue turned solely, as conceded by all parties, upon the acquiescence of

McArthur in the red dotted or Henry line, that the charge of the court really contained but one proposition, to-wit: That where there is a dispute between adjoining proprietors, as to the true dividing line between them, that if one of such proprietors builds his fence, and erects his improvements with reference to a particular line contended for by him as the true line, and the other proprietor respects and acquiesces in such line, he is bound by such respect and acquiescence in said line; and his heirs cannot, after his death, dispute the line, and claim that the line is somewhere else, and this, too, though the line may not be the correct and proper one.

That an express parol agreement as to boundaries will be recognized has been held more than once by our court. (See Houston v. Sneed, 15 Texas, 309; and also George v. Thomas, 16 Texas, 84.)

It would be strange that an agreement based upon silent acquiescence and express acknowledgment would not be upheld. It would be a very inequitable doctrine that would permit an adjoining proprietor to stand by and see a line claimed by his neighbor as the true dividing line, and valuable improvements put up with reference to it, and then, years afterwards, to allow him or his heirs to dispute his acts and unsettle the boundary line. Such we do not believe will ever be the rule in Texas. Indeed it would seem to be the policy of courts to uphold such agreements as to the compromise of a disputed line, even upon comparatively meager testimony; for their tendency is to put an end to litigation, and prevent expense. Suits concerning boundary lines are proverbially expensive and difficult, while the amount involved as a general rule is, as in this case, comparatively trifling. Here the disputed slip is only sixty-five varas wide.

The following authorities in support of these propositions are here grouped for reference. They have been examined, but to review the cases and apply them to the one at bar, would consume too much time: Houston v. Mathews, 1 Yerger, 116; Singleton v. Whiteside, 5 Yerger, 34; Goodrich v. Dustin, 5 Met., 363; Adams v. Rockwell, 16 Wend., 285; Dibble v. Rogers, 13 Wend., 536; Chew v. Morton, 10 Watts, 321; Gray v. Berry, 9 N. H., 473; Jackson v. Ogden, 7 Johns., 238; Ross v. Turner, 5 Yerger, 338; Nichol v. Lytle, 4 Yerger, 456; 9 Yerger, 455.

The following cases, based like those above on the doctrine of *estoppels in pais*, go even further: Gatling v. Rodman, 6 Ind., 289; Knouff v. Thompson, 16 Penn., 364; 7 Penn., 233; McGarity v. Byington, 12 Cal., 431. See also 2 Vol. Smith's Leading Cases, 5th Am. Ed., p. 649.

In considering a question as to a disputed boundary, in which the evidence was conflicting, the Supreme Court of Illinois in a very recent case, in 36 Illinois R., p. 477, Tolman v. Race, in disposing of the subject make the following well timed remarks, eminently applicable to the case in hand:

"The question presented on the trial below was one of boundary, and that depending on the location of a corner, on which much testimony was given on both sides. It was somewhat conflicting in its nature, as it will ever be in cases of this kind—boundary. It is the peculiar province of the jury to weigh the evidence, and the court will not disturb a verdict unless it is clearly wrong."

CALDWELL, J.—We think it well settled upon principle and authority, that a parol agreement or long acquiescence in a boundary line should not be disturbed.

These settlements of disputed, conflicting, or doubtful boundaries should be encouraged by the courts as a means of suppressing spiteful and vexatious litigation, and thus banishing from peaceful communities a fruitful source of discord. "Convenience, policy, necessity, justice—all unite in sustaining such an amicable agreement." (Brown v. Caldwell, 10 Serg. and R., 114). As observed by Judge Wheeler in George v. Thomas, 16 Texas, 89, "It is beneficial to all concerned, as well married women, minors, and others."

It is insisted on, however, in a lengthy and ingenious brief by counsel for appellants, that the case at bar does not come within the rule laid down. We are urged to consider the question of title. The pleadings and evidence do not warrant us in so doing. The only question submitted to the jury was not one of title, but whether or not such a parol agreement or acquiescence existed between the ancestors of the parties as would preclude them from disturbing it.

This is made very clear by a portion of the charge, thus: "There is no controversy, however, as to the title of the parties, each claiming under the same grantor. The dispute is as to the true boundary between their respective tracts of land." The evidence introduced on the trial, although very meager, was to the effect that such an acquiescence did exist. The jury, whose province it was to judge of the sufficiency of the evidence, seem to have been satisfied that it was sufficient to establish the issue for the defendants, and we can see no good cause for setting aside their verdict.

We cite below a number of authorities that we have consulted in support of the view we have taken. In most of the cases, the parties deraigned title through different and conflicting sources. In the case at bar, the parties deriving their respective titles from the same

original patent, or claim, in our judgment gives additional force to the doctrine we have invoked. (George v. Thomas, 16 Texas, 84 ; Houston v. Sneed, 15 Texas, 309 ; Singleton v. Whitesides, 5 Yerger, 34 ; Ross v. Turner, 5 Yerger, 338 ; Goodrich v. Dustin, 5 Metcalf, 363 ; Adams v. Rockwell, 16 Wendell, 285 ; Dibble v. Rogers, 13 Wendell, 536 ; Chew v. Morton, 10 Watts, 321 ; Gray v. Berry, 9 N. H., 473 ; Jackson v. Ogden, 7 Johnson, 238 ; 9 Yerger, 455 ; 4 Yerger, 456.)

Let the judgment be affirmed.

AFFIRMED.