PICKETT, Appellant, vs. NELSON, Respondent.

*March 31 — April 17, 1888.*

*Boundaries: Agreement: Estoppel.*

Where, a boundary line being in dispute or uncertain or unascertained, the adjoining owners locate a line with the obvious intention of making it the permanent line between them, and the same is acquiesced in for a long time and recognized by permanent improvements. such location of the line is binding upon the parties and those claiming under them, without any formal agreement.

APPEAL from the Circuit Court for *Green* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action for damages for breaking and entering the plaintiff's close, described as seventy-four acres, on or about May 1, 1885. The answer is a general denial. The court charged the jury, in effect, that the seventy-four acres described was off from the west side of fractional lots 1, 5, 6, and 8, in section 6 described, and all lying on the east side of the line running north and south through the center of the section; that both parties claimed title to the *locus in quo* under Hanson Irion; that it appeared from the undisputed evidence that Irion went into possession of those lots under a deed from Erastus Corning in November, 1863; that they contained 174.86 acres; that while Irion was in possession, and on November 29, 1867, he entered into a contract in writing with Wemple to sell him the same premises for $2,500; that Wemple went into possession under that contract, and remained in such possession until in 1869, when, under an agreement between him and Irion, he, by a deed of quitclaim, released all his right, title, and interest in the premises under such contract to Irion; that in the fall of 1868 the plaintiff, *Pickett*, went into possession of other fractional lots, 2, 3, 4, 9, and 11, in the

same section, and all lying on the west side of the said
north and south line running through the center of the sec-
tion, under a contract of purchase, and remained in such
possession since; that the evidence tended to show that the
plaintiff had fulfilled such contract and become the abso-
lute owner of said lots 2, 3, 4, 9, and 11 in 1872; that the
undisputed evidence showed that November 8, 1875, Irion
sold to Edward Whitehead the said 174.86 acres of land,
and January 10, 1879, Edward Whitehead conveyed to
Turner Whitehead the said seventy-four acres off the west
side thereof; that November 23, 1881, Turner Whitehead
conveyed the same seventy-four acres to the plaintiff; that
August 6, 1885, Joseph W. Whitehead, who had then be-
come the owner of all of said 174.86 acres except said sev-
enty-four acres, conveyed the same to the defendant,
*Nelson*, by deed, stating that the land therein conveyed
contained 100 acres *more or less;* that the real contention
between the parties was as to the location of the north and
south section line; that the plaintiff claimed it to be seven-
teen rods further east than the defendant admitted it to be;
that the plaintiff claimed that in 1868 he and Wemple and
Irion made a parol agreement under which they had a sur-
vey made, and as a part of it the quarter section line was
located, and that they made their fences on the line thus
established, and that the plaintiff had maintained the same
on his part until the defendant became such owner. From
the judgment entered on the verdict in favor of the de-
fendant, the plaintiff appeals.

For the appellant there was a brief by *B. Dunwiddie*,
and oral argument by *B. F. Dunwiddie* and *B. Dunwiddie*.

For the respondent there was a brief by *A. S. Douglas*
and *Orton & Osborn*, and oral argument by *Mr. P. A.
Orton.*

CASSODAY, J. The record is not certified to contain all
the evidence. This being so, the facts stated above, and

taken from the charge, must be treated as verities. At the time of the alleged trespass, the parties to this action were, respectively, the owners of adjoining farms. There was a dispute as to the north and south line between such farms. The plaintiff owned the farm on the west side of the line, and the defendant the farm on the east side of the line. The claims of the respective parties as to the location of such line at the north end differed some seventeen rods. The Wemple contract with Irion was made November 29, 1867, and called for 174 acres, more or less, and was all on the east side of the line running north and south through the center of the section. Wemple appears to have made some payment on that contract. That contract was surrendered by quitclaim deed from Wemple to Irion, August 9, 1869, in consideration of $200 paid by the latter. There was evidence tending to prove that, in the spring or summer of 1868, the parties all being ignorant as to the true location of the north and south line running through the center of the section, *Pickett* and Wemple, with the knowledge and consent of Irion, then owning the legal title subject to such contract, employed a surveyor by the name of West to establish such line for the purpose of building a partition fence thereon; that such surveyor did establish such line with the assistance of *Pickett*, Wemple, and Irion, the latter carrying the chain; that Wemple and *Pickett* thereupon respectively built portions of such partition fence upon the line so established; that upon the south half of such established line, and after Wemple had so surrendered, a public highway was laid out, and *Pickett* and Irion built road fences on their respective sides of such highway; that subsequently, and in the spring of 1871, Irion and *Pickett* built about ninety rods of such partition fence upon such established line north of such highway, each building one half, and which for several years they respectively maintained. November 23, 1881, the plaintiff obtained the title to the seventy-four acres off the west side of said fractional lots 1,

5, 6, and 8. The real controversy was whether the east line of the plaintiff's land prior to such purchase, or, which is the same thing, the west line of the seventy-four acres thus purchased, was the one so located by West, or a line some seventeen rods west of it at the north end, and coming much nearer to it at the south end, and which appears to have been run by Dodge and Stuntz. Of course, the finding of the one or the other to be the true line would make a corresponding difference in the location of the east line of the seventy-four acres so purchased, which is the partition line here in dispute.

These statements of fact are sufficient to appreciate the exceptions to certain instructions to the jury. At the request of the defendant, the jury were, in effect, told that if they were satisfied from the evidence that the survey made by Dodge and Stuntz correctly established the east line of the plaintiff's land according to the government survey, independent of all *agreements* between the parties, then their verdict must be for the defendant, unless they were further satisfied from the evidence that an *express agreement was entered* into between *Pickett* and Irion that they would be bound by the boundary line between the east and west half of section 6 as established by Mr. West; that the mere recognition of the line thus established by West, and the building of the partition fence and road fences as indicated, and the maintenance of the same by the plaintiff and Irion and his grantor until the plaintiff so purchased the seventy-four acres, was not such evidence of an express agreement between the parties as would justify them in finding that such contract was · made. These instructions may well have led the jury to believe that the parties were not bound by the line located by West, unless it was found from the evidence that *Pickett* and Irion formally entered into an express contract to that effect. This we think was

misleading. Even an express contract may be inferred, and hence proved by circumstances. *Geary v. Geary*, 67 Wis. 248. The mere acquiescence by adjoining owners, through mutual ignorance and mistake, in a supposed dividing line, and the building of a fence thereon, is not conclusive upon the parties. *Hass v. Plautz*, 56 Wis. 105; *Hacker v. Horlemus*, 69 Wis. 280. But this does not prevent such parties, when the location of the true line is in dispute or uncertain or knowingly unascertained, from binding themselves by mutual agreement, either alone or through the agency of a surveyor, as to what should constitute the true location of such line. *Vosburgh v. Teator*, 32 N. Y. 561; *Tobey v. Secor*, 60 Wis. 310. We do not wish to be understood, however, as holding that parties can only bind themselves, in such cases of disputed, uncertain, or unascertained location, by express contract. On the contrary, we think that where such location is made by the parties concerned with the obvious intention of making it the permanent line between them, and the same is continued by long acquiescence and recognition in the making of permanent improvements, it will be binding upon such parties without any formal agreement. *Jackson v. Van Corlaer*, 11 Johns. 123; *Brown v. Caldwell*, 10 Serg. & R. 114, 13 Am. Dec. 662; *Beecher v. Parmele*, 9 Vt. 352, 31 Am. Dec. 633; *George v. Thomas*, 67 Am. Dec. 616; *Clark v. Tabor*, 28 Vt. 222; *Blair v. Smith*, 16 Mo. 273; *Turner v. Baker*, 64 Mo. 218; *McArthur v. Henry*, 35 Tex. 801. In other words, the conclusiveness of such location may, in certain cases, rest upon the doctrine of estoppel *in pais*, rather than upon contract. *Ibid*. The same is true respecting those claiming under such parties. *Ibid*. This must be so, since the subsequent conveyances to those claiming under Irion should be construed with reference to the actual rightful state of the property at the time they were respectively executed. *Whitney v. Robinson*, 53 Wis. 309; *McMillan v. Wehle*, 55

Wis. 695. That was ascertainable by extrinsic evidence in aid of such construction. *Ibid.*

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.