PICKETT, Appellant, vs. NELSON, Respondent.

| 79        9
e114     215

*January 20 — February 3, 1891.*

BOUNDARIES, *practical location of.*

1. A boundary line cannot be deemed doubtful or uncertain, within the rule of law allowing adjoining owners to establish such line by recognition and acquiescence, if the survey made by the general government and the field notes thereof afford sufficient means to enable a competent surveyor to locate it, though some of the monuments by which the corners were marked on that survey cannot be found.

2. Owners of adjoining lands between whom there is no dispute as to the location of the boundary line between them, but who are ignorant as to its true location, and for that reason employ a surveyor to locate it for them, are not bound by his location thereof, if incorrect, even though they afterward acquiesce in it, believing it to be correct.

3. One who has given a contract for the sale of land, which is afterward surrendered, is not bound by an agreement as to, or acquiescence in, the location of the boundary line, made by his vendee in the meantime without his assent, even though he aided in making a survey thereof.

APPEAL from the Circuit Court for *Green* County.

A statement of this case, as it appeared on a former appeal, will be found in 71 Wis. 542. Upon a new trial, twenty questions were submitted to the jury for a special verdict. The scope of those questions and facts sought to be determined by them, and the findings of the jury thereon, sufficiently appear in the opinion. Those being favorable to the defendant, a judgment was entered for him, from which the plaintiff appeals.

For the appellant there was a brief by *Dunwiddie & Goldin,* and oral argument by *B. F. Dunwiddie.* They argued that it was competent for adjoining owners to locate by agreement a boundary line which was unknown; that the line disputed in this case had been so located, and

the parties had long acquiesced in it and were bound thereby, citing numerous cases.

For the respondent there was a brief by *A. S. Douglass*, and *Fethers, Jeffris & Fifield*, and oral argument by *O. H. Fethers*.

COLE, C. J.   The nature of this action can be learned by a reference to 71 Wis. 542, where the case is reported when here on a former appeal.   The judgment was then reversed, and the cause remanded for a new trial.   As said by Mr. Justice CASSODAY then, in the opinion, the real controversy is as to the true line between the lands owned by the parties to the action.   They were owners of adjoining farms. The plaintiff originally purchased the fractional lots comprising the N. W. ¼ of section 6, containing, according to his deed, 161 54-100 acres.   The defendant claims under parties who originally owned fractional lots comprising the N. E. ¼ of the same section, which, according to the deeds, contain 174 86-100 acres.   The plaintiff afterwards acquired title to seventy-four acres off the west side of the lots in the N. E. ¼, and the controversy is as to the east line of this seventy-four acres thus acquired.   The question could readily be determined if the corners of section 6, as originally established by the surveyors under the general government, could be found with certainty.   But there is a doubt as to where they were located, as some of the monuments at the corners of the section cannot be found.   The surveyors who made surveys to find the section corners, and the true quarter line between the N. E. ¼ and N. W. ¼, disagree somewhat as to where the corners of the section were located, except as to the southwest corner, which is a known corner.   Especially did they disagree as to the true location of the north and south quarter-section line between the N. E. ¼ and the N. W. ¼ of the section.   By surveys made by several surveyors from the field-notes of the orig-

inal surveys, there is no very great variation in running the quarter-section line, still there is some disagreement. Of course, if the corners as marked in the original surveys can be ascertained and found they will be controlling, and will determine where the quarter-section line must be located. If the corners cannot be ascertained with absolute certainty, yet, if from the known existing monuments, bearing trees, field-notes, and other means, the location can be ascertained with reasonable certainty, that will be sufficient. In view of the facts found by the jury on the last trial, the court was amply justified in giving a judgment for the defendant. There were twenty questions submitted to the jury by the court, and these questions were answered, generally, favorably to the defendant's claim, and also there was a general finding in his favor. The plaintiff moved for a judgment on the said verdict, and also to set aside most of the answers of the jury to the questions submitted. These motions were denied, and, as we think, properly so. There is no reason or ground for claiming that, upon the facts found in the special verdict, the plaintiff is entitled to a judgment for damages for the alleged trespass, and the general finding is directly and positively against his claim. It would be idle to discuss the evidence upon which the findings are based, and we shall not do so. It is sufficient to say there is abundant testimony to support the verdict, which is conclusive as to the facts found therein. Do these facts show that the judgment is correct? We are clearly of the opinion that they do.

When the cause was here on the former appeal, it was contended that the evidence showed that the adjoining owners had agreed upon and adopted a line between their farms as a permanent boundary; that, in the spring of 1868, the plaintiff and Wemple, who had then a contract of purchase from Irion, the owner of the legal title, being ignorant of the true location of the north and south

line running through the center of the section, employed a surveyor by the name of West to establish that line; and that the line run by him was adopted and became a permanent boundary by the recognition and acquiescence of the parties, and was binding upon them. But the jury found, on the last trial, that this line was not in dispute between the parties at the time, and that it was not uncertain or unknown, but that the surveys made by the general government, including the survey of section 6, and the field-notes of such surveys, afforded sufficient means for ascertaining the true location of the boundary line. (Answers to questions 1, 2 and 3.) If that were the case, the line could not be said to be doubtful or uncertain, within the rule of law. *Hartung v. Witte*, 59 Wis. 286. If the means were at hand to establish the line, and a competent surveyor could locate it, it was not uncertain in a legal sense. That is certain which can be made certain, is an old maxim of the law, and, as Mr. Justice ORTON says in the last case: " Under the statute of frauds it is not competent to make a boundary line by parol, except when the same is in doubt and unknown." Page 299. The rule of law rests upon sound grounds. It will not do to say that the line was unknown and uncertain because some of the original monuments, placed by the government surveyors in the first instance to mark the corners, were missing, or could not be identified. If the field-notes of the original surveys afforded means for ascertaining the true location of the boundary line, that was sufficient, and all that was necessary. But there was really no dispute between the plaintiff and Wemple as to the boundary line between them. Neither knew where it was or pretended to know, consequently, on account of their ignorance, they employed West to locate it for them. They evidently supposed he would ascertain the true dividing line between them, but the weight of testimony tends to show that he did not do

so.   But the jury also found that the plaintiff and Wemple, by a mutual agreement, or through the agency of a surveyor, in the spring of 1868, made an express or implied agreement as to what would constitute the location of the boundary line, and that this was done with the obvious intention of making such line a permanent boundary between them.   (Answers to questions 5 and 6.)   But Irion was not a party to that agreement.   He had no knowledge of it while he was really the owner of the land in the N. E. ¼. (Answers to questions 8, 9 and 10.)   True, he had given Wemple a contract to sell him the land, but whether Wemple had paid anything on it or not, does not appear.   But, it seems, he soon after released all interest in the land to Irion, because he could not pay for it, so that really Irion was the true owner, or the party most vitally interested in the N. E. ¼, and the person entitled to a voice in the establishment of the boundary line.   This is obvious.   It appears from the evidence, and the jury so found the fact to be, that Irion aided West in making the survey.   But he was a mere passive agent, neither assenting to nor opposing what was done by the plaintiff and Wemple.   He says: " I had sold, and I thought I was out of the premises at that time.   I did not expect it would come back on my hands again.   I was there by request, simply as a chain-bearer, that was all." Under the circumstances, there is no valid ground for saying that he consented or agreed to, or in any way acquiesced in, what was done by the plaintiff and Wemple. He surely should not be bound by their agreement as to the boundary line, if they made one.   The same remark is true as to the parties who subsequently became owners of lands in the N. E. ¼.   They cannot be said to have consented to, or to have acquiesced in, or to have adopted as a boundary line, the line which was run by West.   And such, in effect, was the finding of the jury.   (Answers to questions 12, 13, 14, 15 and 16.)   The jury further found that

West made a mistake in locating the line run by him, and that he located the same east of the true quarter-section line. Further, that the line run by Stuntz and Dodge correctly located the quarter-section line. (Answers to questions 19 and 20.) In the face of these findings, it was inevitable that judgment should be given the defendant. The alleged trespass was not upon his land, and the cause of action falls to the ground. It is said there was no evidence showing any dissent to the line run by West, but it is very clear that there has been no acquiescence by the parties interested in the lands in the N. E. $\frac{1}{4}$ in the establishment of that line as a boundary. The learned circuit judge charged that the mere acquiescence by the adjoining owners, through a mutual ignorance and mistake, in a supposed dividing line, and the building of a piece of fence thereon, is not conclusive upon the parties. We think this was correct. "Where there is an agreement or acquiescence in a wrong boundary, when the true boundary can be ascertained from the deed, it is treated, both in law and equity, as a mistake, and neither party is estopped from claiming the true line." That is the language of this court in *Hartung v. Witte*, 59 Wis. 286; *Pickett v. Nelson*, 71 Wis. 546. Here the jury found that the line run by Stuntz and Dodge correctly located the quarter-section line, and this is conclusive as to that fact. There is ample evidence to sustain such a finding, and, when the true line can be ascertained by a correct survey, it must control. It is very certain that in no possible view can it be said that the West line has been settled as the boundary line by prescription. And it is equally certain that, upon the facts found in the verdict, there is no ground for holding that the parties in interest ever recognized and adopted that line, either by agreement, consent, acquiescence, or otherwise, so as to make it binding upon them. But it is said the trial court erred in instructing the jury in various particulars. The charge covers several pages

of printed matter, and each sentence in the greater portion of it is excepted to by the plaintiff. We shall not dwell upon this branch of the case, further than to observe that we see nothing in the charge which is unfavorable to the plaintiff. The law applicable to the evidence seems to have been fairly and clearly stated for the guidance of the jury. The verbal criticisms which are made upon the charge are properly characterized by the defendant's counsel as hypercritical. They are destitute of merit, and are more nice than sound. The learned circuit judge may have taken unnecessary pains to explain the meaning of some words used in common parlance, but he surely said nothing which could prejudice the plaintiff. We think the judgment of the circuit court is right, and it must, therefore, be affirmed.

*By the Court.*— Judgment affirmed.