PETERS, Respondent, vs. REICHENBACH, Appellant.

*April 2—April 22, 1902.*

*Deeds: Record as evidence: Seal: Certificate of county surveyor: Ejectment: Possession: Boundaries: Division fences.*

1. Where, in order to entitle a deed to be recorded, a certificate thereon must have an official seal affixed, the register's record of such deed is not admissible in evidence under sec. 4156, Stats. 1898, unless it bears some device indicating the existence of such seal upon the original, even though the certificate recites that the seal has been affixed.
2. Under sec. 771, Stats. 1898 (providing that the "certificate of the county surveyor . . . shall be admitted as legal evidence in any court"), an official certificate of the county surveyor declaring the making of the survey therein set forth, is admissible in evidence. The purpose of said section is not merely to give admissibility to certified copies of the official record of surveys.
3. Ejectment can be maintained only by one out of possession.
4. The building of a division fence upon the assumption by both parties that it is upon the true line, and occupation up to it by both parties for less than twenty years, do not constitute a binding location of the line, where there was no dispute or uncertainty as to the correct line, no express agreement that the fence should be regarded as such line, and no circumstances such as should estop either party from insisting upon the true boundary.

VOL. 114 — 14

APPEAL from a judgment of the circuit court for Jackson county: JAMES O'NEILL, Circuit Judge. *Reversed.*

The plaintiff claimed to own the N. W. ¼ of the N. E. ¼ of section 14, township 22, and range 4, in Jackson county. Defendant owned the government subdivisions immediately south of it. There was proof of several surveys of more or less particularity, extending from 1861, but none of them, except the last, by one Keach, having any special relation to the east and west one-eighth section line, dividing plaintiff's and defendant's premises. One of these surveys was made by Adams, county surveyor, in 1883 or 1884, and shortly after that the fence in dispute was built by plaintiff's predecessor in title and by the defendant. It does not appear that the line was specifically located by Adams, but he located other points in the section, and the representative of plaintiff's predecessor (one Crombie), with the aid of another and the participation of the defendant, ran what they supposed to be the true line, and built the present fence thereon, each building half. There is no evidence of any dispute as to the true location of the line, nor of any agreement; apparently, simply a supposition that the line adopted was the true one. It appears that the premises had been separated by an old fence a number of years before, the location of which is not definitely established, but was partly north and partly south of the fence then built. That fence has continued up to the present time, accompanied by occupation, as the line, by both parties. In 1899 the defendant employed a surveyor (Keach) to make a survey, more especially of north and south lines through this section, in the course of which, however, he was obliged to locate the corners and quarter corners of section 14, from all of which the government monuments had disappeared, except the southeast corner of the section. A year later, at the employment of the plaintiff, and with the aid of the county surveyor, he repeated this survey, and located the line between plaintiff's and defendant's premises about four

feet south of the fence which was built about 1884, as above stated. The action is to recover that strip.

The plaintiff's title was deraigned from the government down, except that, with reference to the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, it involved a deed attempted to be proved by the record thereof in the register's office, purporting to be executed in New York, acknowledged before one Thomas Edward, Jr., as commissioner of deeds for the city of Brooklyn, who did not purport to affix any seal to the acknowledgment; but the record disclosed a certificate by the clerk of Kings county and of the supreme court of the state of New York, satisfying our statute in substance, and closing with the following words: "In testimony whereof, I have hereunto set my hand and affixed the seal of said county and court this 22d day of April, 1886. JOHN M. RANKEN, Clerk." The record bears no scroll or other indication of any seal of this officer. The record of that deed was objected to for that reason.

The correctness of Keach's survey as establishing the true line between the parties was submitted to the jury under instructions, and the jury returned a verdict in favor of the plaintiff, whereupon judgment was entered establishing plaintiff's title in fee simple and right to possession, and for nominal damages against the defendant for withholding the premises, from which judgment the defendant appeals.

For the appellant there was a brief by *L. M. Sturdevant* and *F. J. Reichenbach,* and oral argument by *Mr. Sturdevant.*

*G. M. Perry,* for the respondent.

DODGE, J. 1. The first assignment of error raises the question of the admissibility in evidence, and the efficiency to establish title when admitted, of the record of a deed of April 20, 1886, which deed is sufficiently described in the statement of facts, as also the objection thereto. The necessity of some device on a copy to indicate the existence of a

seal upon the original of a tax deed was discussed in *Dolan v. Trelevan,* 31 Wis. 147, approved in *Hunt v. Miller,* 101 Wis. 583, 77 N. W. 874; and it was there held, with reference to a copy attached to a pleading, that no such designation was necessary where the deed itself recited, above the signature of the county clerk, whose duty it was to affix the seal, that he had executed the same under the seal of the county board. In *Putney v. Cutler,* 54 Wis. 66, 11 N. W. 437, it was held that a *fac simile* of the county board's seal need not appear as a part of the record of a tax deed in the register's office; but that was held with reference to a record which bore a scroll with the word "Seal," which, from its situation, was apparently ambiguous as to whether it was a private seal of the individual signing, or might indicate the presence of the county board's seal. But in *Hiles v. Atlee,* 90 Wis. 72, 62 N. W. 940, the exact question was before the court,— whether a page in the register's office, purporting to be the record of a tax deed required to be executed under the seal of the county board, was a record, when it did not bear either a *fac simile* of the county board's seal, or any scroll or other mark or statement to indicate that there was a seal on the original, except the recitation above the clerk's signature. It was there held that the county board's seal was an essential part of the deed, and that the absence of anything upon the record to indicate that it was present upon the original was conclusive of one of two propositions,— either that no such seal appeared on the original, or that the pretended record was not a record of the deed. We can discover nothing to distinguish the present case from that. The page from the books of the register of deeds was admissible in evidence only if it was a record of a deed bearing upon the clerk's certificate a seal, and, upon the reasoning of *Hiles v. Atlee,* the conclusion would seem to be inevitable, as in that case, either that the original had no such seal, so that it could not legally

be recorded, or that the page presented was not a record of the deed. The admissibility in evidence of the register's record of a deed is entirely statutory, and depends on sec. 4156, Stats. 1898. Unless it is a record, within the terms of that section, of a deed legally recordable under secs. 2219 and 2232, it is not given admissibility and was improperly received, and, being received over objection, proved nothing. We are therefore constrained to the conclusion that title in the plaintiff to the N. W. ¼ of the N. E. ¼ of section 14 was not established, and that recovery of the possession of any part thereof was erroneous.

Plaintiff in this connection makes some contention that he may recover, notwithstanding he has failed to show paper title, on the strength of his possession; but his complaint distinctly alleges, and the evidence all shows, that neither he nor his predecessors in title have been in possession of the strip in controversy within sixteen years prior to the commencement of the action. The facts were the same at the moment of the commencement of the suit that they had been ever since the disputed fence was built, and, if those facts constituted possession in the plaintiff of the premises described in the judgment, his recovery was improper. Ejectment can be maintained only by one out of possession. *Zander v. Valentine Blatz B. Co.* 95 Wis. 162, 70 N. W. 164.

2. Another assignment of error is predicated upon the admission of the official certificate of the county surveyor, Adams, made April 16, 1884, and declaring the making of the survey therein set forth. Sec. 771, Stats. 1898, provides that the "certificate of the county surveyor . . . shall be admitted as legal evidence in any court." This language is very broad and general. It may, of course, be subject to some necessary limitations; but, to the extent of declaring that which has been done by the county surveyor in his official capacity, its admissibility would seem to be unquestionable.

Some suggestion is made by appellant that its only purpose is to give admissibility to copies of the official records of survey upon the certificate of the county surveyor; but this construction is entirely foreign to the language used, and would be an entirely unwarranted modification of what the legislature expressed. We conclude that the certificate in question was properly admitted.

3. Another assignment of error is predicated upon the refusal of the court to direct a verdict for the defendant. Under this assignment it is argued that the undisputed evidence established an agreed location of the fence built in 1883 or 1884, and occupation with reference thereto for so long a period as to make it binding upon the parties. The effect of the building of a fence by the mutual consent of the owners on each side, and occupation with reference to that fence, has been subject of comment in numerous cases in this court, but without laying down very definitely just what is that effect. Some lines, however, are pretty well drawn. Thus, it is established that the building of a fence as a division line, if followed by undisturbed possession by both parties for more than twenty years, does not refute, but, rather, tends to establish, the adverse character of the holding, so that, if not overcome by other evidence, the statutory bar will establish ownership on each side of it, and it thereby becomes the true dividing line of ownership. *Bader v. Zeise,* 44 Wis. 96, 102; *Donahue v. Thompson,* 60 Wis. 500, 19 N. W. 520; *Hacker v. Horlemus,* 69 Wis. 280, 34 N. W. 125; *Wollman v. Ruehle,* 100 Wis. 31, 75 N. W. 425; *S. C.* 104 Wis. 603, 80 N. W. 919. On the other hand, the general rule has been stated that a location by the parties of the line between their holdings, with the intention of making it the true line, and followed by long acquiescence, will be binding. There is no case in Wisconsin in which those facts alone have been held sufficient, unless the occupation has extended over the

statutory period of twenty years. In *Hartung v. Witte,* 59 Wis. 285, 298, 18 N. W. 175, 180, it is said:

"There must be an *uncertainty* as to the true line, and some question, dispute, or controversy about it which can be settled by such an agreement or acquiescence."

Again:

" 'There must be a dispute about the true boundary.' Tyler, Bound. 333. Where there is an agreement or acquiescence in a wrong boundary, when the true boundary can be ascertained from the deed, it is treated both in law and equity as a *mistake,* and neither party is estopped from claiming to the true line."

This limitation received some reference in *Pickett v. Nelson,* 71 Wis. 542, 546, 37 N. W. 836, 837, where the court said:

"We do not wish to be understood, however, as holding that parties can only bind themselves, in such cases of disputed, uncertain, or unascertained location, by express contract. On the contrary, we think that where such location is made by the parties concerned, with the obvious intention of making it the permanent line between them, and the same is continued by long acquiescence and recognition in the making of permanent improvements, it will be binding upon such parties without any formal agreement. . . . In other words, the conclusiveness of such location may, in certain cases, rest upon the doctrine of estoppel *in pais,* rather than upon contract."

In the same case, on a second appeal (79 Wis. 9, 47 N. W. 936), a finding of fact that the line was not in dispute or uncertain deprived of any effect the mere mutual building of a fence as an agreed and adopted line, though followed by many, but less than twenty, years of occupation with reference thereto.

It would seem from these cases in our own court that appellant's contention cannot be sustained. The occupation was less than twenty years. There is no evidence of any express agreement. The fence, obviously, was built on the assump-

tion by both parties that they had found the correct line. There is no evidence of any dispute or disagreement as to the location of the line, nor of any uncertainty then supposed to exist; nor is there anything of the circumstances mentioned in *Pickett v. Nelson,* 71 Wis. 542, 37 N. W. 836, to estop either party from insisting on his true boundary, for nothing appears to have been done in reliance upon the correctness of that fence line, except to mutually cultivate up to it for sixteen or seventeen years after it was built.

4. But as a further ground for direction of a verdict, and also for a motion for a new trial, the appellant contends strenuously that there was no evidence to go to the jury of the correctness of the survey made by the surveyor Keach in 1899, and again at the employment of the plaintiff just before the commencement of this suit. We cannot feel justified in reviewing this evidence. We have examined it carefully, and we have no hesitation in saying that there is evidence sufficient to carry the question of its accuracy to the jury. Whether that evidence is contradicted by facts and circumstances testified to by other witnesses is not material to that conclusion. The surveyor explained at length his methods of ascertaining and determining the location of the several points in that section, and, while they may have justified more or less approach to certainty, they at least presented to the jury the question of the correctness of his conclusions; and we are unable to say either that the court erred in permitting the question to go to the jury, or abused his discretion in refusing to set aside their decision.

By reason of the insufficiency of the record of the deed of 1886, discussed under the first division of this opinion, we must hold that the judgment is erroneous in so far as it awards plaintiff title or possession of any part of the N. W. ¼ of the N. E. ¼ of section 14; and, as to the portion of that one-eighth section described in the complaint, judgment should have gone for the defendant. The rest of the judg-

ment seems to be without error. The litigation involves only trifling value, and ought not to be protracted. To avert that, we shall give the parties opportunity to treat as conclusive the trial already had.

*By the Court.*—Judgment reversed, and cause remanded for a new trial, but with the option to plaintiff to avoid such new trial by electing in writing, within thirty days after *remittitur* is filed, to take judgment for only that portion of the disputed premises contained in the N. E. ¼ of the N. W. ¼ of section 14, in township 22 N., and range 4 W. If so modified, it shall then stand affirmed. Appellant to recover costs in this court.