DUEL, Appellant, vs. BLUEMBKE, Respondent.

*September 20—October 7, 1913.*

*Boundaries: Agreement between adjoining owners: When binding: Subsequent purchasers: Consideration: Trial: Special verdict: Surveys: Presumptions in support of judgment.*

1. Where an oral agreement between adjoining landowners to abide by a survey procured by one of them locating the boundary line between them did not rest upon any consideration, was not the compromise of any dispute, had not been acquiesced in for any length of time, and was not communicated to a grantee when he purchased from one of such owners soon after the survey was made and before a fence had been built on the line, the agreement was not binding upon said grantee.

2. The division of the boundary fence to be built on the line so agreed upon was not a consideration for such agreement, but an independent stipulation.

3. In an action involving the location of such boundary line wherein, although the jury found that plaintiff and defendant's grantor agreed upon the line as located by plaintiff's surveyor, the court rendered judgment in favor of the defendant, such finding by the jury is not sufficient to show that the judgment was erroneous, there being no presumption, as against the judgment, that the agreement so found was a valid written agreement, and it appearing, when the verdict is construed with the evidence, that the agreement was an oral one.

4. Defendant having testified that at the time of his purchase no fence had been built on the line so agreed upon, and no finding by the jury upon that subject having been made or requested, that fact will be presumed to have been found by the court in support of the judgment under sec. 2858*m*, Stats.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge.  *Affirmed.*

The cause was submitted for the appellant on the brief of *E. Blewett,* and for the respondent on that of *Ecke & Hughes.*

TIMLIN, J.    This case was commenced in justice's court and certified to the circuit court on the ground that the title to land was in question.    A jury trial in the latter court resulted in a special verdict finding that the boundary line as located by the surveyor, Marshall, was not the true line; that the plaintiff and defendant's grantor agreed upon said line; that the defendant at the time he purchased the land from said grantor did not know of such agreement; and that the value of the timber cut by the defendant lying between the old fence and the line laid out by Mr. Marshall was $30. The circuit court considered that this verdict entitled the defendant to recover and gave judgment accordingly.    Although the verdict is confined by its terms to the boundary line between the northwest quarter of the southwest quarter and the northeast quarter of the southwest quarter of section 19, the land owned by the contending parties was the west half of said southwest quarter, owned by the plaintiff, and the east half of said southwest quarter, owned by the defendant, and the line run by the surveyor, Marshall, was a boundary line between the two tracts last mentioned.    The cutting complained of, however, was in the north half of said quarter-section.    If the judgment had been for the plaintiff it probably would be presumed in support thereof that the agreement found by the verdict was a valid written agreement.    But the judgment went for the defendant, and the verdict is insufficient to overthrow the judgment for the defendant, considered apart from the evidence or considered with the evidence, under the rule of *Pickett v. Nelson,* 79 Wis. 9, 47 N. W. 936; *S. C.* 71 Wis. 542, 37 N. W. 836; and *Gove v. White,* 23 Wis. 282; *S. C.* 20 Wis. 425.    There

is nothing in the verdict to show that the line was doubtful or uncertain, that there was dispute between the parties prior to the agreement, that the agreement rested upon a consideration, or that the line agreed upon was acquiesced in for any period of time.

Looking into the evidence, we find that this surveyed line started at no known or identified government corner; no such corner was properly relocated as a lost corner; it disagreed with the ancient fences, and, notwithstanding section 19 was on the west side of the township, it threw the shortage into the east eighty acres of the quarter-section in question. A different boundary line existed lying west of the surveyed line and marked by a division fence which had been renewed or maintained in the same place for thirty or forty years, the respective owners had occupied up to this fence for that time, and this fence would leave the timber in question upon the land of defendant.. The plaintiff offered evidence tending to show that the location of the true line was for a long time a matter of uncertainty; that defendant's grantor, Mr. Day, owned the land about a year and sold it to defendant in the summer of 1910. In 1909 the plaintiff had this Marshall survey made for the purpose of locating the boundary line. The Marshall line was located thirty-two feet east of the old fence at the extreme south end thereof and thirty feet east of the old fence at the north end thereof. The evidence upon which the verdict finds an agreement upon the Marshall line is as follows:

"*Q. Mr. Duel,* did you and Mr. Day go over this line that Mr. Marshall surveyed, the line established by Mr. Marshall? *A.* Yes, sir. We walked the line over together and divided the fence that day, he taking the north eighty rods and me taking the south eighty rods. I says to him, 'Which end of the fence would you rather have?' And he made the remark that it didn't make any particular difference to him which end he had. 'Well,' I says, 'if it doesn't make any

difference to you, an old surveyor said to me once that it was customary for each man to stand on his own land and take the right hand of the fence,' and I says to Mr. Day, 'If you haven't any objection I would like to do it that way.' He says, 'I don't care, that would give you the south eighty rods and me the north eighty rods,' and we divided it. . . . He asked if I thought the line was right, and I told him 'Yes.' I thought it was, that he took a great deal of pains in running out that line, and that I thought Mr. Marshall did the best he could, and so far as I know the line was right. 'Well,' Mr. Day says, 'I don't know anything to the contrary and we will abide by the line as it stands now as Mr. Marshall has run it out.' After that I built my half of the fence. Mr. Day made no objections after that as to the building of that fence. He knew I had built it. The above conversation took place between the first and middle of April, 1910. . . . I think he [Day] sold the place, that is he had *Mr. Bluembke* there looking at the place before the fence was completed."

Mr. Day as a witness for defendant denied that he made any agreement to abide by this survey and the defendant denied any knowledge of such an agreement.

Were the question properly before us, we would have no hesitation in holding that this testimony is entirely insufficient to establish such agreed location of the boundary line as would bar the true owner or establish an incorrect line. The adjoining owners did not jointly procure the survey to be made. There was no consideration for the agreement. The division of the boundary fence was not such a consideration, but an independent stipulation. There was no acquiescence for any length of time in this survey. But the jury having found an agreement, we must construe the verdict with the evidence given in support thereof and decide the case on the hypothesis that an oral agreement to abide by this survey after the survey, not resting upon any consideration, not the compromise of any dispute, and not acquiesced in for any length of time, was made and was not communicated to the defend-

ant when he purchased, soon after the survey, the east half of said southwest quarter. At the time of his purchase he testifies that no fence had been built on this Marshall line, and this fact not having been covered by the verdict or requested to be covered is presumed to have been found by the court in support of the judgment under sec. 2858*m*, Stats.

*By the Court.*—Judgment affirmed.