Chief Justice Robertson
delivered, the Opinion of the Court.
Charles W. Hall having filed a bill in chancery in the Scott Circuit Court, against John Hall, then of this State, and also against one McGruder, for the purpose of obtaining a decree for money, and John Hall having, after he answered the bill, died in Louisiana, where, during the pendency of the suit, he. had become domiciled — a bill of revivor was filed for reviving the suit against the executor, heirs and devisees of the decedent, and which alleged that the executor had been qualified and still resided in Louisiana, and that, though the heirs and devisees lived in Kentucky, the complainant had no knowledge of any assets, real or personal, elsewhere than'in the State where the testator died.
Subpoenas were served upon the persons against whom the bill of revivor was filed as heirs and devisees; but. there was no actual service on the foreign executor.
The Circuit Court, however, rendered a decree for a large sum of money, to be pa.id — first, out of assets in the hands of the executor, next out of estate descended, and next out of estate devised, and lastly by McGruder, who was the testator’s surety.
A fieri facias, which was issued on that, decree, was levied on three slaves in the possession of Alfred J. Hall, one of the heirs or devisees against whom the decree *451 had been rendered, and which slaves the testator had owned in Kentucky, and had never removed therefrom. Alfred J. Hall, claiming those slaves as his own, under a bill of sale from his father, dated in 1829, resisted the creditor’s right to subject them to sale in satisfaction of the decree; but a jury impanneled to try the right of property, having found the slaves subject to the execution, they were accordingly sold by the sheriff, and were purchased by William B. Warren, for whose use the decree was obtained.
A man made a hill Qf sale of slaves to his son, and died, leaving the son one of his heirs and, devisees: if the bill of sale was fraudulent as to creditors,the law of this state will consider the son; as holding the slaves, not in his own right, but as heir or devisee, and subject- to sale as assets, of his fa. theiythe fraudm lent vendor; and if they are taken to satisfy a decree against heirs & devisees jointly, it is immaterial in which ca-therm But if the son claims them, under his bill sale — which is good against his lather, the grantor — the son will holding'them as heir, so far as father raref concerned.
*451 Afterwards, this Court having reversed the decree, on the ground that the Court which rendered it had no jurisdiction as to the foreign executor, and that the bill of revivor did not show that either the heirs or devisees were liable in Kentucky — Alfred J. Hall brought an action of detinue against William B. Warren, for the slaves he had bought under the execution on the decree.
Upon the trial, after the execution of the bill of sale had been proved, Warren offered to prove that it was made only for the purpose of defrauding the creditors of John Hall. But the Circuit Judge was of the opinion that, as, in his judgment, the decree against the executor was void, and the slaves, if .they were, for any purpose, the property of John Hall at the time of his death, passed to his heirs, devisees, or executor, according to the law of the domicil only, and as, also, there was no evidence as to what that law .was, therefore the slaves did not appear to have been subject to the execution against either the executor, or the heirs and devisees; and consequently, considering the question of fraud in the bill of sale, as therefore immaterial, he refused to admit the proffered evidence.
And thex-eupon, a verdict and judgment were rendered against Warren, for the slaves, or their assessed value, and for damages for the detention of them. And that judgment we are now to revise.
Unless the decree be sufficient to show that Charles W. Hall was a creditor of John Hall, deceased, evidence tending to prove that the bill of sale by the latter to Alfred J. Hall was fraudulent as to his creditors, was certainly inadmissible, on any allowable hypothesis. And *452 therefore, if, as argued in this Court, the entire decree be void, for want of jurisdiction to any extent whatever, there can be no doubt that, on that ground alone, the Circuit Judge did not err in rejecting the proffered evidence as to fraud, even if the reason' assigned in the record for that rejection, be insufficient.
The succession to movable nova we property which a resstate may”'have here, at the time depend up on the law of his domas his creditors here are con-will not be regraded. Administration for the benefit of ways Teulated by the lex loci scita.
.The slaves, m the case supra, would have been assets m the hands of an uT?»rwr<Nhad there been one, and no claim to asserted*”1 unde” the bai of .de; no adm r here° he”considérelas holding them as see — -To °whom they might have passed, like land, in the absence of any claim p> them by an administrator.
*452 As to the foreign executor, the decree was undoubtedly void; because he was never,'nor could ever have J . .... .. , c been, as executor, within the cognizance and power ol the Court that rendered the decree.
_ . . . . Eut the heirs and devisees, not only were within the jurisdiction of that Court, but were actually served with process; and, although the bill of revivor did not show that they were liable, nevertheless, as the Court had jurisdiction over them, and over the question of liability, fad that they did not appear to be liable, does not show that the Court had no jurisdiction to render the decree, but proves only that the decree was erroneous— not void.
Then, however palpably erroneous the decree may have been, as it was valid against the heirs and devisees until reversed, the sale under the execution upon it, before it fiad been reversed, vested in the purchaser a good legal title, if the slaves who were thus sold were subiect to be sold in satisfaction of the decree, which, so J 77 far as the heirs and devisees were-concerned, was evidence of the fact that C. W. Hall was such a creditor of John Hall, deceased, as might question his bill of sale to A. J. Hall, on the ground that, though it was binding ' . . , , ° , . , ° on the parties to it, it was trauduient and void as to John, Hall’s creditors,
The only question yet to be considered, therefore, is whether the slaves were liable to be sold under the de- • • cree against the heirs and devisees of John Hall.
If the laws of Kentucky should govern the case, we do not doubt that the slaves were subject to be sold-unher the decree against the heirs and devisees, upon the hypothesis that the bill of sále to Alfred J. Hall was void as to Charles W. Hall; because then the law would c011slher A. J. Ha'll as holding them, not in his own right, but as devisee, or heir, for the benefit of such a creditor *453 of his father — the bill of sale as to such a creditor being void. And, as the decree is against the heirs and devisees jointly, it is not material whether A. J. Hall be considered as a devisée of the slaves, or as holding them in the legal character of heir. But doubtless, as he seerps to have claimed them under the bill of sale'alone, and as, therefore — that being good between the parties to it ■ — John Hall had no right to dispose of them by his will, the law would consider Alfred as holding them as heir, so far' as his father’s creditors might be concerned.
If a man makes a bill of sale of slaves here— which Í3 fraudulent and void as to creditors, and afterwards goes to another state, and dies, domiciled there— if the vendee asserts no claim to the slaves, they will be assets in the hands of an adm ’ r here — if any; and if no adm r here, they will pass, like lands, to an heir or devisee. — But if a purchaser claims the slaves, though his bill of sale may be fraudulent as to creditors, the law of the foreign domicil will not apply; and neither a foreign executor, nor an adpi’r here, can claim them; for the bill of sale— good against the vendor, will be, equally conclusive against his representatives.
Whether the slaves were subject .to sale under a decree against the vendor (the father of the vendee,) must he determined by the law of Ken. And, if the bill of sale under which the son, as a purchaser, claims, is void as to a decretal creditor,that law decides that he shall be considered as holding for the benefit of the creditor, as heir of his father the debt- or — especially as no personal representative of the father could assert any claim to them, or assent to the claim of an heir or devisee. And—
*453 And although the slaves, being movable, should — so far as any question of distribution or descent merely might be involved. — be deemed Subject to the law of John Hall’s domicil at the time of-his death — if he had then been the owner of them; yet, so far as his Kentucky creditors were concerned, the rule of comity which, as to mere distribution or descent would apply the law of the domicil, would be, even in that case, inapplicable and should not be regarded; for justice by Kentucky to her own citizens, and the security of their just rights, are paramount to all considerations of comity, between States. And therefore, it is well settled that administration for the benefit of creditors shall always be regulated by the lex loci rei scitce.
Had there been administration' of John Hall’s estate in. Kentucky, and had Alfred W. Hall asserted no right to the slaves under his bill of sale, the laws of this State would alone have regulated the rights of creditors; and those laws would have made those slaves assets in the hands of the administrator cum testamento. And there being no administrator, A. J. Hall might have been considered as being possessed of the slaves as h devisee or as an heir, to whom, by the law of this State, they might have .descended, like land, when no personal representative claimed them.
But A. J. Hall having held and claimed the slaves as' a purchaser from his father in his lifetime, and the bill of sale being conclusive on John Hall, however fraudulent it may have been as to his creditors, it is evident that, even if there had been no creditor here, the law of Louisiana could not be applied to those slaves, because they *454 could not have passed, according to that law, either by descent from John Hall, or by his will. Nor could his executor in Louisiana have had any title to them, for any purpose, or in any possible event, unless he had obtained the possession of them ’as executor de son tort.— And it is equally evident, that no administrator in Kentucky, could have had any interest in them, as the bill of sale would have concluded him, as well as John Hall and his heirs and devisees. 2 Saunders’ Rep., 137, a, n. 2. Ralls vs. Graham, 4 Mon., 123.
The son — if the hill of sale was fraudulent as to the debt decreed against him and his co-heirs — • might be considered as holding either as heir, oías ex’or de son tort.
In a bill of revivor to revive a suit against a foreign executor & resident heirs and devisees, it was alleged that the heirs and devisees had no assets: this allegation — only tan tamount to a suggestion that the comp t, and the party for whose use the suit was brought, had no knowledge of any assets in the hands of the devisees or heirs— does not preclude or estop them, from alleging and proving, in another controversy, that a bill of sale which the de cedent had made of certain slaves, which had been sold under a decree in the suit, as assets in the hands of his heirs or devisees — was void as to his creditors, & the slaves therefore assets.
*454 The law of Kentucky, which protects the rights of creditors, and under whose guardianship the property now in litigation is held and enjoyed, must therefore decide whether that property was subject to sale under the decree against John Hall’s devisees and heirs. And if the bill of sale to Alfred J. Hall was void as to the decretal creditor, the law of this State, as we understand it, decides that A. J. Hall, who claimed and held the slaves under it, should, for the benefit of that creditor, and as to his debt, be considered as holding the slaves in the character of heir of his father, who was the debt- or.; and the more especially, as there neither was, nor could have been any personal representative of the deceased debtor who could have had any. title to them, or whose assent to the title of Alfred J. Hall, either as purchaser or as heir, could have been necessary to vest or perfect it, for himself or for the creditor. If the bill of sale to A. J. Hall was fraudulent as to the debt decreed against himself and others, as heirs and devisees of the debtor, he might have been legally considered as holding the slaves either as heir or as executor de son tort.
We are therefore of the opinion that, although the proceedings in the suit in chancery were singularly inappropriate, and the decree thereon rendered was glaringly erroneous, the sale of the slaves now in question was legal and valid, if, as attempted to be proved on the trial of this case, the bill of sale from John to A. J. Hall was void as to C. W. Hall, as an ascertained creditor of John Hall; and consequently, that if C. W. Hall thus had a right to sell those slaves, Warren, as purchaser, may have acquired a legal title to them.
[By Joseph G. Lyle, Esq. Counsel for defendant.]
May 29.
And we are also of the opinion that the fact that the bill of revivor suggested that C. W. Hall, the complainant therein, had no knowledge of any of John Hall’s estate being in Kentucky, should not now' preclude an enquiry into the validity of the bill of sale: first — because such a suggestion does not necessarily imply an admission that A. J. Hall’s claim to the slaves was not fraudulent, but should be understood rather as a declaration that C. W. Hall did not know that it was invalid, even as to himself, or as evidence merely of his ignorance at that time, of the fact that. those slaves were then in Kentucky, or had ever been the property of John Hall; for there is nothing in the record tending to prove that, during the pendency of the suit in chancery, O. W. Hall, or Warren as ‘the beneficial party, was informed respecting any of those facts; and secondly — because, were it admitted that both C. W, Hall and Warren believed, whilst the suit was pending, that A. J. Hall had been a bona fide purchaser of the slaves, still Warren would not be thereby estopped from now proving that the bill of sale was fraudulent and only color-able.
It is therefore our opinion, that the rejected evidence ought to have been admitted.
Wherefore, it is considered that the judgment of the Circuit Court be reversed, and the cause remanded for a new trial.