[No. 6,183.]

## THOMPSON *v.* FELTON, Exec'r of Pioche, et al.

Adverse Possession—Statute of Limitations—Law of the Case—Notice—Definitions.—T. being in adverse possession of land, and having the same inclosed, leased it to O. Afterward the land was patented as part of a Mexican grant; and O. (without the knowledge of T.) attorned to M., the grantor of the defendants, and the owner of the land under the patent; M. having no knowledge of O.'s being in possession as tenant for T., and being informed by O., upon inquiry, that he was in possession for himself. Subsequently, and more than five years after the issue of the patent, O. surrendered possession to T., who was shortly afterward ejected by the defendants. In an action to recover the possession by T. (claiming to have acquired the title by an adverse possession for over five years subsequent to the patent): *Held*—following the decision of this Court upon a former appeal of this case—as follows:

    1st. To constitute an adverse possession, the occupation must be open, visible, notorious, and exclusive, and must be retained under a claim of

right to hold the land against the owner: and the owner must have knowledge, or the means of knowledge of such occupation and claim of right.

2nd. The possession of O. was sufficient to put all persons upon inquiry as to the capacity in which he held; but M. having made the inquiry without success, was not affected with notice of his relationship to T.

3rd. Therefore, after the attornment of O. to T. (the latter having no notice, either actual or constructive, that the former held otherwise than for himself) the possession of T., through O. his tenant, was not adverse, in a legal sense, to the title of M. and his successors.

ID.—ID.—DEFINITION.—To constitute adverse possession, there must be, not only an actual occupation, but also a claim of title hostile to that of the true owner. *Held*, accordingly, that it was error to instruct the jury to the effect that land was adversely possessed where protected by a substantial inclosure, or where it has been usually cultivated or improved; the definition, omitting the element of hostility, which is an indispensable constituent of adverse possession.

ID.—LANDLORD AND TENANT—ATTORNMENT—LAW OF THE CASE.—THORNTON, J., concurring: The patent was issued in pursuance of the judgment of a court of competent jurisdiction, and O., in yielding to it, attorned in consequence of this judgment, which brought the case within the section of the Act of 1855, referred to in the former decision of this case (44 Cal. 508). But this Court, in that decision, on the same facts, *held* the attornment to be void, and this has become *the law of the case.*

APPEAL from an order granting defendants a new trial, in the Fourth District Court, City and County of San Francisco. MORRISON, J.

The facts are stated in the opinion, and in the report of the case on the former appeal. (44 Cal. 505.)

*Flournoy & Clarken*, and *Leonard Reynolds*, for Appellants.

This Court held on the former appeal that Osborn remained the tenant of Thompson, from the time of his entry in 1855, to the surrender of the possession by him to Thompson in 1863. This conclusion is based upon the language of our statute. (Stat. 1855, p. 171.) The Court, in its decision, thought proper to modify the language of the statute, so as to declare the attornment of a tenant to a stranger void *as between the tenant and his landlord*, but not necessarily void as between the tenant and the party to whom he attorned. The Court do not in terms assert the latter proposition; and it may well be doubted if such a proposition will ever be asserted by this Court in distinct terms as law. Such a conclusion would seem to tend to defeat the apparently clear purpose of the statute, and is certainly con-

trary to the uniform current of authorities. (*Byrne* v. *Beeson*, 1 Doug. 179; *Jackson* v. *Bush*, 20 Johns. 5; *Jackson* v. *Horsen*, 7 Cowen, 323; *Jackson* v. *Davis*, 5 Id. 123; *Willison* v. *Watkins*, 3 Peters, 43; *Jackson ex dem. etc.* v. *Miller*, 6 Cowen, 755.)

Although the language of this Court, in *Thompson* v. *Pioche*, is not in terms that an attornment by a tenant to a stranger may not necessarily be void as between the original lessor and the stranger, still it may be inferred from its subsequent reasoning that it was in effect intended so to decide; and this, though erroneous, may be regarded as the law of the case. Accepting this to be so, however, the order must still be reversed.

The Court held (following *Smith* v. *Yule*, 31 Cal. 182; *Fair* v. *Stevenot*, 29 Cal. 488), that Osborn's actual possession at the date of the lease from Moss, was not notice to Moss of the tenancy of Osborn, but that it was sufficient to put him upon inquiry. Under the facts then appearing, the Court was of the opinion that the inquiry had been duly pursued and without result—as Osborn, when applied to by Moss, stated in substance, that he was in possession in his own right. Under the case as now presented, the facts are different; as it appears from Moss's own testimony that Osborn told him that he was occupying as tenant-at-will of some one—the *witness did not ask of whom.* It appears, therefore, that Moss did not pursue the inquiry, and therefore, under the former decision in this case, he is to be deemed affected with notice. (*Donner* v. *Palmer*, 51 Cal. 634.)

*John A. Stanley, Geo. R. B. Hayes,* and *Delos Lake,* for Respondents.

The Court below granted a new trial on the single ground that the attornment of Osborn to Moss interrupted the running of the statute. It is the settled rule, however, that if for any reason a new trial should have been granted, the decision awarding a new trial will not be reversed. (*Simar* v. *Canady*, 53 N. Y. 298; *People* v. *Supervisors*, 70 Id. 228; *Hastings* v. *Uncle Sam*, 10 Cal. 341.)

The Court erred in that portion of its charge purporting to be a quotation from *Polack* v. *McGrath*. The quotation stops with the word "improved," omitting the qualifying words, "it shall be deemed to have been possessed and occupied by the person *claiming adversely*, but without color of title"; which, taken as a whole, correctly states the law, that, in addition to the proof of the land having been protected by a substantial inclosure, it is incumbent upon him who alleges title under the statute to prove *that his occupation was in hostility to the true owner.*

An attornment by a tenant to a third party is only void so far as it affects any rights of the tenant's landlord which existed at the time of the attornment, and is legal and binding between the tenant and the third party to the extent that after such an attornment the occupation of such tenant is not hostile to the title of the third party, and such an attornment stops the running of the statute in favor of such tenant's landlord. (*Rupert* v. *Mark*, 15 Ill. 540.) Supposing the attornment to be void, Osborne nevertheless occupied the premises by the permission of Moss, (given at his, Osborne's, solicitation) after the 31st of December, 1859, and consequently was not adverse. The only effect of the voidness of the attornment would be to preserve any right or title which Thompson *then* had; it would not subsequently create or acquire for him a right or title not then in existence. If the plaintiff had any right or interest in the land, which would render Osborn's attornment to Moss void at law, such acknowledgment, by Osborn, of Moss as the true owner of the land, would, nevertheless, have stopped and interrupted the running of the Statute of Limitations, as applied to any subsequent occupation by Osborn. A possession, to be adverse, within the true meaning of the statute, must be actually hostile to the true owner. (*Russell* v. *Erwin's Admr.* 38 Ala. 45.)

Department No. 2, SHARPSTEIN, J.:

The plaintiff sues in ejectment for the recovery of about forty acres of land lying within a larger tract known as the Bernal Rancho. The entire tract was granted to the Bernals, by the

Mexican Government, and on the 31st day of December, 1857, the United States issued a patent to them for it. The defendant deraigns title through mesne conveyances from the Bernals. The plaintiff claims to have acquired title to the tract involved in this action, by an adverse possession thereof for a period of five years prior to the ouster. A verdict was rendered in favor of the plaintiff. The defendant moved for a new trial, which was granted; and from that order the plaintiff has appealed.

To establish an adverse possession for the statutory period, the plaintiff testified that in 1853–4 he inclosed a tract of about 118 acres, which included the land sued for in this action, and from that time until the latter part of 1855 he pastured stock within the inclosure. In November, 1855, he leased the premises to one Osborn, and went into the interior of the State, where he remained until 1863. In the meantime a patent for the Rancho issued, and Osborn took a lease of the land in 1859 from J. Mora Moss, who at that time held the legal title to it under the patent. When the plaintiff returned to San Francisco in 1863, Osborn claimed to be in possession of about one-third of the tract leased to him by plaintiff. Osborn delivered, and plaintiff assumed possession of, all that Osborn had retained possession of up to that date.

Osborn never lived upon any part of the land leased to him by plaintiff, but testifies that he used it for pasturage, and kept the fences in sufficient repair for that purpose. The case has been here before under the title of *Thompson* v. *Pioche*, (44 Cal. 505) and the questions then decided must be treated as finally settled so far as this case is concerned. One of the points decided was, that, if Moss had no knowledge, and after reasonable inquiry had failed to obtain any, of the relation which existed between the plaintiff and Osborn at the time when the latter took a lease from Moss, the effect of the acceptance of said lease by Osborn from Moss was to interrupt the running of the Statute of Limitations, so that thereafter the possession of the plaintiff through his tenant Osborn was not adverse, in a legal sense, to the title of Moss and those claiming under him. And the Court further said: " We are of the opinion that the evidence failed to bring home to Moss notice of the plaintiff's

claim to the land." The order granting a new trial reads as follows:

"This cause has been tried here three times, and each time there has been a verdict for the plaintiff. A new trial is now granted, for the sole and only reason that the Court is of the opinion that the attornment of James Osborn, the tenant of the plaintiff, to J. Mora Moss, interrupted the running of the Statute of Limitations, and prevented the ripening of the title of the plaintiff. It is therefore ordered that the defendants have a new trial."

If the Court below was of the opinion that the evidence on the last trial failed to bring home to Moss notice of the plaintiff's claim to the land, before or at the time of the execution of the lease from Moss to Osborn, then upon the authority of *Thompson* v. *Pioche, supra,* it was the undoubted duty of the Court to grant a new trial on that ground.

It is urged, however, on behalf of the appellant, that the evidence introduced on the last trial shows that Moss did have notice, or, what is equivalent to notice, information sufficient to put him upon inquiry as to the fact that Osborn was in possession of the premises as a tenant of the plaintiff, and not otherwise. As to what Osborn told Harvey Brown, they do not agree, and where there is a substantial conflict in the testimony this Court never reverses an order of the Court below which grants or denies a new trial. The testimony of Moss is not as clear on that point as we might desire it to be; but we are satisfied that when testifying in regard to the tenancy of Osborn, he had reference to another tract than that claimed by the plaintiff, of which Osborn had a lease. And this is entirely consistent with the testimony of Osborn, in which he said that he did not think he told Moss of his (Osborn's) lease from plaintiff. The Judge before whom the case was tried doubtless took this view of it, and as that accords with our own, we should not disturb the order granting a new trial, if there were no other grounds upon which the order could be sustained.

There is, however, at least one other ground upon which we think that the order should be affirmed. The following extract from the instructions of the Court to the jury was, as a whole,

we think, objectionable, and it was excepted to by the respondent. The Court read to the jury § 325 of the Code of Civil Procedure, and then proceeded as follows:

" Now upon this statute our Supreme Court, in this particular case of *Thompson* v. *Pioche*, says: 'To constitute adverse possession, the occupation must be open, visible, notorious, and exclusive, and must be retained under a claim of right to hold the land against him who was seized; and the person against whom it is held must have knowledge, or the means of knowledge, of such occupation and claim of right.' This is the language of our Supreme Court in this case, upon the first appeal, and upon the same points we have the decision of the Supreme Court in the case of *Polack* v. *McGrath*, in which Justice Rhodes says: ' The statute has come to the aid of the Court in defining adverse possession; and in the section already stated has declared, where the land has been protected by a substantial inclosure, or where it has been usually cultivated or improved. One-half of the cases mentioned in the eleventh section, in which the land shall be deemed to have been possessed and occupied by the person claiming adversely under the title, founded upon a written instrument or decree, is also where land has been protected by a substantial inclosure. The statute has in these respects remained in force since its passage in 1850; and the person claiming adverse possession, who shows a substantial inclosure of the premises of which he claims the title, need not prove any further occupation, cultivation, or use of the premises.' [Reads.] This is also the doctrine of many cases in this Court. Such is the definition given in our Supreme Court in these two cases of adverse possession—of that character of possession, which puts the Statute of Limitations in motion, and keeps it running, so as to ripen, at the expiration of five years, into a perfect title. "

The exception applies to that part of the instruction which purports to give the decision of this Court in *Polack* v. *McGrath*. The objection to that part of the instruction is, that while it professes to give the definition which this Court gave of adverse possession in *Polack* v. *McGrath*, it omits one very important part of that definition. In addition to what is set forth in the above extract from the opinion in *Polack* v.

*McGrath*, Rhodes, J., says: " If there is also proven the claim of title in hostility to that of the true owner, it will amount to adverse possession." The element of hostility, which is an indispensable constituent of adverse possession, was left out of the definition which the jury was in effect told was the definition given of adverse possession in *Polack* v. *McGrath*. As given to the jury, it would appear that the Court, in *Polack* v. *McGrath*, held that something less was required to constitute adverse possession than the same Court had held to be requisite in *Thompson* v. *Pioche*. We think that this constituted a good ground of exception, and although the Court below, in granting a new trial, expressly limited itself to one ground, this Court is not thereby precluded from affirming . the order on other grounds, if there are other grounds upon which the order should have been made.

There were exceptions to other parts of the charge given, as well as to the refusal of the Court to give instructions which the respondent requested the Court to give, but we are not prepared to say that the Court erred in other respects than that above mentioned.

Order granting a new trial affirmed.

MYRICK, J., concurred.

THORNTON, J., concurring:

In concurring in the opinion of my brother, Sharpstein, I desire to add, that, in my judgment, the attornment of Osborn to Moss was made under conditions which brought it within the section of the Act of 1855, referred to in the case of *Thompson* v. *Pioche*, 44 Cal. 508. · As had been held by the Supreme Court in *Leese* v. *Clark*, 18 Cal. 535, and 29 Cal. 387, years prior to the decision in 44 Cal., and affirmed by the United States Supreme Court, (*Beard* v. *Federy*, 3 Wall. S. C. 491) the patent is record evidence of an adjudication, conclusive in its character, that Moss was entitled to the land sued for, from the date at least of the presentation of the claim to the Land Commissioners, as against all persons in the condition that Thompson was. The rule of *Leese* v. *Clark* is, no doubt, the conclusively settled

rule in this State. This patent was issued in pursuance of the judgment of a court of competent jurisdiction, and Osborn, in yielding to it, attorned in consequence of this judgment, which brought the case within the statute. This conclusion is sustained in principle by the following cases: *Mayor* v. *Whitt*, 15 M. & W. 571; *George* v. *Putney*, 4 Cush. 351; *Chambers* v. *Pleak*, 6 Dana, 456; *Moss* v. *Goddord*, 13 Met. 177; *Watson* v. *Lane*, 11 Exch. 769; *Evans* v. *Elliott*, 9 A. & E. 342; *Simers* v. *Saltus*, 3 Den. 214; 5 Hill, 599; 4 Id. 643; 25 N. Y. 462.

But the Supreme Court, in the case of *Thompson* v. *Pioche*, *on the same facts* held that the attornment of Osborn to Moss was void. This decision, however erroneous, under numerous decisions of the Supreme Court of this State constitutes the *law* of the case in all of its stages. To this we must yield. I have long had much doubt as to the propriety of this rule concerning the law of the case, but it has been too long settled to be now disturbed. The case must be left to be determined according to the rules laid down when in the former Supreme Court on the appeal therein heard and decided.

As the case goes back for a new trial, I will add, that as to adverse possession the law is correctly stated in the case referred to in 44th California. The elements of such a defense are there clearly set forth (see p. 517 of 44 Cal.) in that part of the opinion of the Court commencing with the words "to constitute adverse possession," down to end of the paragraph. The Court below will no doubt follow this, on the retrial of the cause. The "*claim of right*" referred to, is usually a mixed question of law and fact, and it should be submitted to the jury with appropriate instructions. What the instructions should be I will not venture to state in advance.