[No. 18329.    Department Two.—November 18, 1895.]

GEORGE PETERS, RESPONDENT, v. ANNIE L. DE ROSE GRACIA ET AL., APPELLANTS.

PARTITION FENCE — LOCATION OF BOUNDARY — CONFLICTING EVIDENCE. — Where there is conflicting evidence as to whether a partition fence was constructed upon the line of an old fence constituting a partition boundary, which had been destroyed by a freshet, or whether the new fence was rebuilt further north than the true line, a finding that it was not rebuilt upon the line of the old fence, but was rebuilt a few paces further north, within the exterior limits of a specified survey, will not be disturbed upon appeal.

ID.—PROOF OF SURVEY—FAULTY METHOD—ASCERTAINMENT OF BOUNDARY —SUPPORT OF FINDING.—Where a survey of the boundary line in dispute, which pursued a faulty method of ascertaining the boundary by not commencing at the proper starting point, is admitted in evidence without objection, it becomes evidence, though apparently not the best, of the location of the line in the place .claimed by the plaintiff, and a finding of the court in accordance therewith is supported by the evidence.

ID.—MISLOCATION OF PARTITION FENCE — STATUTE OF LIMITATIONS — ADVERSE POSSESSION.—Where it is proven that an agreement existed between the owners of adjoining surveys that the land upon which a fence and ditch was located belonged to one of them, and that his land in fact extended further south than the fence and ditch, and that a joint survey would be made to fix the true line, the possession of the other owner to the fence and ditch is not adverse, and the statute of limitations does not run against the true owner.

ID. — DECLARATIONS OF ADJOINING OWNERS — STATEMENTS OF DECEASED PERSONS — CREDIBILITY OF WITNESSES.—Evidence of the declarations of adjoining owners made long prior to the commencement of the action,

some of which were made by deceased persons, for the purpose of showing that it was understood between the adjoining owners that a fence between them was not upon the true partition line is admissible, although it is a just caution addressed to the trial court that there is danger of relying upon the declarations of deceased persons when it becomes impossible of contradiction; but the credibility of such evidence is for the consideration of the judge of the court who saw and heard the witnesses.

APPEAL from a judgment of the Superior Court of the County of Sacramento and from an order denying a new trial. A. P. CATLIN, Judge.

The facts are stated in the opinion of the court.

*A. L. Hart,* and *A. C. Hinkson,* for Appellants.

The survey relied upon by plaintiff was faulty, in that it started at a monument in another and independent survey, numbered 173, lying north of plaintiff's land, and ran to the south, determining the southern boundary line of plaintiff's land by reference to courses and distances and quantity. (*Black* v. *Sprague,* 54 Cal. 266; *Gordon* v. *Booker,* 97 Cal. 586; *Anderson* v. *Richardson,* 92 Cal. 623; *Blackburn* v. *Nelson,* 100 Cal. 336; *Harkins* v. *Nelson,* 53 Cal. 316.) The court erred in overruling the objection of the defendant and permitting the witness Vincenzo Casselli to testify to a conversation with one Miss Ross, in which Miss Ross told him that the fence was all on her premises, and in denying defendants' motion to strike out the witness' testimony upon that subject. (*Morton* v. *Folger,* 15 Cal. 279; *Davis* v. *Davis,* 26 Cal. 23;· 85 Am. Dec. 157.) Acquiescence by an owner of land, manifested by silent assent or submission with apparent consent, for a period of upwards of five years, in the location of a fence as the dividing line between his land and that of the adjoining proprietor, operates to estop him from questioning the correctness of the location. (*Burris* v. *Fitch,* 76 Cal. 395; *Helm* v. *Wilson,* 76 Cal. 476.)

*Armstrong & Bruner,* and *McKune & George,* for Respondent.

THE COURT.—There are four certain swamp land sur-
veys in Sacramento county which are numbered, re-
spectively, and extend in a continuous chain along the
east bank of the Sacramento river from south to north,
in the following order: 147, 165, 282, and 173. The
tracts 147, 165, and 173 were surveyed in the year 1858,
and tract 282 in 1859; all under the act of April 21,
1858, providing for the sale, etc., of swamp and over-
flowed lands. (Stats. 1858, p. 198.) By section 11 of
that act surveys of lands held by actual settlers were
required to conform to the lines and boundaries estab-
lished by such settlers. This action—begun April 23,
1892—is prosecuted by plaintiff, the present owner of
said survey 282, to quiet his alleged title to a strip of
land lying along the common boundary of said surveys
282 and 165—the north line of 165 and the south line
of 282. Defendants own said tract 165, and the ques-
tion involved relates to the true location of said com-
mon boundary. At the time said surveys were made it
seems that one Watson was a settler on tract 165, and
one Angus Ross on tract 282; patents from the state for
the lands were issued in course; in the year 1861 one
Casselli became the owner of the land in survey 165;
about 1869 he conveyed the same to the brothers Gra-
cia—Joseph and Manuel; upon the death of both of
them, a few years before the commencement of this ac-
tion, their title passed to the defendants; survey 282
was owned in 1861 by a person designated in the record
as Miss Ross; she conveyed it to plaintiff in 1865. Of
the four parcels mentioned No. 147 was first surveyed;
then the northwest corner of such tract 147 was adopted
as the initial point for the survey of 165; thence the
east bank of the river was meandered northerly, as the
field notes show, " to a stake on the levee at the end of
a partition fence dividing Watson and Ross' land"; and
thence the line, now in dispute, quitting the river ran
" with said fence south 84 degrees, 30 minutes, east
65.39 chains," etc. When tract 282 was surveyed the
starting point adopted was the northwest corner of sur-

vey 165, viz., the stake at the end of said partition fence. At present a fence and ditch serve, and for many years have served, to delimit the possession of the two tracts and these are claimed by defendants to be substantially on the line of the partition fence of 1858. The court found, however, that the old fence was destroyed by the freshet of 1861–62, which devastated that region, and was rebuilt a few paces further north within the exterior limits of survey 282. From this fact, and other evidence, the court concluded that the true boundary is a little to the southward of the existing fence and ditch, and, over-ruling also the defense of the statute of limitations interposed by defendants, gave judgment awarding the land in dispute to plaintiff.

As to whether the fence which divided the two ranches was moved from the line it occupied in 1858, the evidence was sharply conflicting. Said Casselli testified positively that Miss Ross rebuilt it, soon after the flood of 1861–62, four or five paces further north than it stood originally; there was also evidence of parol admissions by Casselli while he owned survey 165, and also by the Gracia brothers while they held the title, that the land of plaintiff extended south of the then existing fence and ditch. True, there was testimony tending to disprove this theory, and some circumstances appear which, on the record as presented to us, do not accord well with that view; but the resolution of such conflict by the trial court cannot be disturbed here.

The original monument which marked the boundary between the two parcels being thus displaced, it became necessary to ascertain such boundary by other means; for this purpose a survey, made some months before the trial, was admitted in evidence (without objection), which took as its starting point a monument in the boundary between tracts 282 and 173—the north line of plaintiff's land. The natural and obvious mode of ascertaining the disputed line was, it would seem, by first determining the location of the northwest corner of survey 147, the initial point of the original survey of No.

165, and thence running the lines of 165 acording to the original field-notes; for the south line of No. 282 was by the survey of 1859 made coincident with the previously established north line of 165. It was not proved that the northwest corner of 147 cannot be located from existing data. The late survey reversed the course suggested, and pursued a faulty method (*Blackburn* v. *Nelson*, 100 Cal. 336); one which would make good mistakes and imperfections, if any, in the original survey of tract 282 at the expense of the south line of that tract, when in fact that line was, relatively to the others, fixed and controlling; but, being received, it was evidence, though apparently not the best, of the location of the line in the place claimed by plaintiff, and the finding of the court in accordance therewith is not without support; it is countenanced also by the evidence of removal of the old fence.

We do not think that the court erred in overruling the objection to the testimony of Casselli that in 1861, when he owned survey 165, Miss Ross, who then was owner and in possession of survey 282, told him that the fence was all on her premises. This, together with the whole conversation stated by the witness, was admissible as tending to show that the owners of survey 165 held in subordination to the claim of the owners of survey 282 that the latter extended between the fence, and with the understanding that the true line was to be afterward ascertained.

The evidence showed actual occupation of the premises in controversy by defendants and their predecessors in interest for a period of more than thirty years. But the court found that, up to a time within five years before the commencement of this action, it was well understood by defendants and their predecessors that the true division line between the two tracts was to be ascertained by a survey, and that until recently their possession was not adverse to the plaintiff. It was in evidence that an agreement existed first between Casselli and Miss Ross, then between Casselli and plaintiff,

afterward between plaintiff and the Gracia brothers, that the plaintiff's land extended somewhat farther south than the fence and ditch, and that a joint survey would be made to fix the line. In such a case the statute of limitations does not run. (*Irvine* v. *Adler*, 44 Cal. 559; *Quinn* v. *Windmiller*, 67 Cal. 461.)

A good deal of evidence of statements made by deceased persons many years ago appears in the record; for example, those of the Gracia brothers, to the effect that they did not claim the existing fence and ditch to mark the true line of their land; and appellants strongly urge the danger of relying upon this species of evidence when it becomes impossible of contradiction. The caution is just, but it addresses itself mainly to the trial court; in this instance the learned judge of that court saw and heard the witnesses, and their credibility was for his consideration; moreover, he made a personal inspection of the disputed boundary, and we cannot say that his conclusions from the matters before him should have been different.

The judgment and order are affirmed.

Hearing in Bank denied.