[Civ. No. 1065.   Third Appellate District.—April 25, 1913.]

## CORNELIA L. JANKE, Respondent, v. WALFRED H. McMAHON, Appellant.

ADVERSE POSSESSION—MERE OCCUPANCY OF LAND—PAYMENT OF TAXES. Mere occupancy of land, not under a claim of title, is insufficient to establish title by adverse possession, although the statute at the time of the occupancy does not require the payment of taxes to vest such title.

ID.—EVIDENCE OF ADVERSE HOLDING—BURDEN OF PROOF.—The burden of proof is upon the person in possession and claiming against the holder of the legal title, to show that his occupancy is hostile and not subordinate to the legal title; he must prove all the essential elements of adverse possession.

ID.—OPEN POSSESSION NOT NECESSARILY ADVERSE.—Possession may be open and notorious, and still not adverse.

ID.—CLAIM OF TITLE—BELIEF AS TO BOUNDARIES.—The belief of a landowner that his lot extends to the limits of his inclosure is not equivalent to a claim of title or right, and is therefore not sufficient to sustain an adverse possession.

ID.—OCCUPANCY OF LAND—CLAIM OF RIGHT—CODE SECTIONS.—The "occupancy" referred to in section 1007 of the Civil Code must be construed in connection with the corresponding provisions of the Code of Civil Procedure, and to overcome the legal title the occupancy must be under a claim of right, or adverse, as that term is used in the law.

ID.—EVIDENCE AGAINST ADVERSE HOLDING—ASSESSMENT OF TAXES.—The fact that one in possession of land does not have it assessed to himself is strongly persuasive that he does not claim to be the owner.

ID.—BOUNDARIES—MISTAKE—ESTOPPEL TO CLAIM TRUE LINE.—Where there is an acquiescence in a wrong boundary when the true boundary may be ascertained from the muniments of title, it is treated as a mistake, and estoppel to claim the true line does not arise.

ID.—ACQUIESCENCE IN BOUNDARY—ABSENCE OF DISPUTE OR UNCERTAINTY.—Where a boundary fence is built on what the parties suppose to be the true line, and there is no dispute, and it is not known that there is any uncertainty, the establishment of a boundary by implied consent and acquiescence does not follow therefrom.

ID.—ACTION TO RECOVER REAL PROPERTY—IMPROVEMENTS—FINDINGS.—In this action for the recovery of real property it was proper for the court to find the facts as they existed at the time of the filing of the complaint, thereby not taking cognizance of improvements made thereafter by the defendant.

ID.—FINDINGS—WHEN IMMATERIAL.—Findings attacked by the appellant are immaterial where they could not have altered the judgment if they had been in his favor.

ID.—FAILURE OF COURT TO FIND ON SOME AVERMENTS.—A contention by the appellant that the trial court failed to find upon certain averments of the answer does not demand specific consideration on appeal if certain findings of the court, which are supported by the evidence, control and uphold the judgment.

ID.—ACTION TO RECOVER REAL PROPERTY—IMPROVEMENTS—EVIDENCE.—In an action for the recovery of land, where the court is justified in concluding that at the time the defendant made improvements the plaintiff believed they were not located upon his land, and that the defendant knew, or had ready means of knowing, that they were located upon the plaintiff's land, evidence that the plaintiff permitted the improvements without protest may properly be excluded.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

William H. Chapman, for Appellant.

C. W. Eastin, for Respondent.

BURNETT, J.—The action is to recover the possession of a narrow strip of land, nearly three feet in width and forty feet in depth, and to quiet plaintiff's title thereto. The appeal is from an order denying defendant's motion for a new trial. It is admitted by appellant that the record title is in respondent but its normal effect is sought to be obviated by the claim of adverse possession. Herein it is the contention that "nowhere does it appear that the plaintiff or her predecessors or any one of them had actual physical possession or ever occupied the disputed strip of land, the surface of the soil; on the contrary, the undisputed evidence is that neither the plaintiff nor any of her predecessors ever had such possession, but that the father of the defendant was continuously in the occupancy and exclusive possession of the disputed strip, since March 3, 1862, up to the time of his death, about 1890, and that thereafter, the defendant, a son and heir of the person so in possession, has continuously occupied and actually held possession of the disputed strip; that on the line between the disputed strip and plaintiff's property there was constructed, about 1862, a building and fence and that the building and fence remained on said line without objection on the part of any one until the fire of April, 1906, and that immediately thereafter the defendant rebuilt the said building and fence and it was not until the latter part of 1907, long after defendant had made his improvements, that any claim to the disputed strip was made by plaintiff or any one else." It was conceded, however, at the trial that, by reason of his failure to pay the taxes, defendant's possession had not ripened into a title by prescription, but it was asserted that the father became the owner by virtue of his possession of the disputed strip and the son had succeeded to the father's in-

terest.    The character of the father's possession is, therefore, the first question to be considered.

The evidence as to his occupancy of the land is brief and it may be well 'to exhibit it in full.    It appears in the testimony of appellant as follows: "My father was in possession of this piece of property about forty-six years.    He obtained possession of the property in dispute in 1862 and built on it one year afterward.    He built a three-story house on it and this covered the land in dispute.    There was a fence on the easterly side of the property that he had in his possession the same place as where the fence is now.    There was a four-foot alleyway between the fence and the old house.    The stairs ran into that alleyway from the back porch.    The old house ran back sixty feet to where there was a back porch built coming down into this alleyway on the two feet ten inches that is in dispute.    The stairs ran into that alleyway from the back porch.    Neither Mrs. Janke, the plaintiff, nor her husband, to my knowledge, at any time had possession of any portion of that two feet ten and three-fourths inches, not since my father bought it.    There was no agreement between my father or Mr. or Mrs. Janke with respect to the dividing line, but my father had the fence on it before Mrs. Janke's house was ever built."

It is thus to be seen that the only evidence of adverse possession consists of mere occupancy.    The disputed strip was inclosed with and as a part of the lot belonging to McMahon, Senior, and the back porch of his house partially rested upon said strip but there is no further basis for the claim of title. There is no evidence that he ever declared that he owned the land or that he intended to retain it as against the holder of the legal title.    In short, there is no showing, beyond the fact of possession already pointed out, of any act or declared purpose on the part of McMahon indicative of a claim of title. While during the period of his occupancy the statute did not, as it does now, require the payment of taxes, to vest title by adverse possession, it did exact, as it does now, that the possession must be for the statutory period under a *claim of right* in order to prevail over what we denominate the legal title.

Occupancy was, then as now, only one of the elements that constitute title by prescription and the rule of law has ever

been.in this state that "In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title unless it appears that the property has been held and possessed adversely to such legal title, for five years before the commencement of the action."

In other words, the burden of proof is upon the person in possession and claiming against the holder of the legal title to show that his occupancy is hostile and not subordinate to the legal title. He must prove all the essential elements of adverse possession. (*Sharp* v. *Daughney,* 33 Cal. 505; *De Frieze* v. *Quint,* 94 Cal. 653, [28 Am. St. Rep. 151, 30 Pac. 1]; *Ball* v *Kehl,* 95 Cal. 606, [30 Pac. 780]; *Baldwin* v. *Temple,* 101 Cal. 396, [35 Pac. 1008]; 2 Am. & Eng. Ency. of Law and Prac. 363.)

It is equally true that possession may be open and notorious and still not adverse. (*Thompson* v. *Felton,* 54 Cal. 547; *Shiels* v. *Haley,* 61 Cal. 157; *Rix* v. *Horstmann,* 93 Cal. 502, [29 Pac. 120]; *Baldwin* v. *Temple,* 101 Cal. 396, [35 Pac. 1008]; *Woodward* v. *Faris,* 109 Cal. 12, [41 Pac. 781]; *Peters* v. *Gracia,* 110 Cal. 89, [42 Pac. 455].)

The reasonable and creditable inference, harmonizing with the presumption of law, is that McMahon, Senior, had no desire to appropriate land belonging to another and that he laid no claim to property that he did not own but that, through an honest mistake as to the location of the division line, or through inadvertence or carelessness, he included the said strip within his inclosure, holding himself in readiness to yield what a survey or other satisfactory evidence should legally exact of him.

We may suspect that he believed that his lot extended to the limits of the inclosure but such belief is not equivalent to a claim of title or right and therefore not sufficient to constitute an adverse possession. (*Grube* v. *Wells,* 34 Iowa, 148; *Palmer* v. *Osborne,* 115 Iowa, 715, [87 N. W. 712]; *Hess* v. *Rudder,* 117 Ala. 525, [67 Am. St. Rep. 182, 23 South. 136]; *Woodward* v. *Faris,* 109 Cal. 12, [41 Pac. 781].)

Of course, if plaintiff had shown no title there would be significance and potency in the suggestion of appellant that defendant being in possession is entitled to judgment "regardless of whether he had acquired a prescriptive title by adverse possession or not." But, during all the time in controversy, the record title was in plaintiff or her predecessors in interest and the "occupancy" referred to in section 1007 of the Civil Code must be construed in connection with the corresponding provisions of the Code of Civil Procedure, and thus, the conclusion is reached that to overcome the legal title the occupancy must be under a claim of right, or *adverse,* as that term is used in the law.

The cases cited by appellant hold nothing to the contrary but are in harmony with respondent's position.

In *Woodward* v. *Faris,* 109 Cal. 12, [41 Pac. 781], it was said: "Title to land may be acquired by adverse possession for five years within the limits of an inclosure, although the inclosure was made under a mistaken belief as to the boundary of the land, where it is claimed as matter of fact that the fences were upon the line; but, if the inclosure was made without claiming that the fences were upon the line, but with the expectation of moving them to the true line when it should be determined, the possession would not be adverse, and the statute would not run."

The character of the title acquired by *adverse possession* and not by mere *occupancy* is the principal question discussed in the well considered case of *Arrington* v. *Liscom,* 34 Cal. 365, [94 Am. Dec. 722], and it is there properly held that "a party who has been in the exclusive adverse possession of lands for a period of time which, under the statute of limitations, vests him with a title thereto, may maintain an action against a party claiming under a record title, to have said adverse claim determined and adjudged null and void as against him." In other words, adverse possession for the requisite period confers a substantial title with all of the incidents of possession under a valid written title.

The point decided in *Cannon* v. *Stockmon,* 36 Cal. 535, [95 Am. Dec. 205], was that the five years of "continued, exclusive, adverse possession" need not be "*next* preceding the commencement of the action."

The controverted question in *Breon* v. *Robrecht*, 118 Cal. 469, [62 Am. St. Rep. 247, 51 Pac. 33], was whether during the pendency of an action the defendant, from the mere fact that he remains in possession, could acquire any new right as against the plaintiff. The supreme court aptly illustrates the baseless character of such contention by this statement: "If that be so, a successful plaintiff in ejectment, although he commenced his action within five years after the beginning of the adverse holding, gains nothing by his suit unless he can so control the machinery of the courts and the conduct of the defendant as to obtain a judgment and the execution of a writ of restitution within five years after the first unlawful entry of the defendant."

That possession *under a claim of right* was in the mind of the court in the case of *Baker* v. *Clark,* 128 Cal. 181, [60 Pac. 677], is disclosed by the following quotation: "Baker from that time, continued in the open, notorious, uninterrupted adverse and exclusive possession of the premises, claiming the same in his own right."

In *Sousa* v. *Pereira,* 132 Cal. 77, [64 Pac. 90], it was held that "The plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's title; and where the plaintiff shows no title, the defendant in possession is entitled to judgment, regardless of whether he has acquired a prescriptive title by adverse possession or not." This, of course, must be true, since "occupancy for any period confers a title sufficient against all except the state and those who have title by prescription, accession, transfer, will, or succession." (Civ. Code, sec. 1006.)

We omit specific mention of the other cases cited by appellant, but, in dismissing this contention, it may be said that not only is there an entire lack of evidence that the senior McMahon's occupancy was under a claim of right, but appellant has furnished an important circumstance in aid of the presumption that the possession was in subordination to the legal title. He testified in effect that the disputed strip was not assessed to him nor to his father. The fact that one in possession of land does not have it assessed to himself is, of course, strongly persuasive that he does not claim to be the owner.

Nor is plaintiff estopped from questioning the boundary line by reason of any agreement or acquiescence as to its location. As we have seen, there was no express agreement relating to it and we cannot infer such an understanding. We cannot assume that coterminous owners would agree to a wrong boundary line unless there was actual or believed uncertainty as to its true location. If they did, their agreement would not be binding. "But a formal agreement to fix a boundary line is not valid, indeed is void, if the parties knew, or any one of them knew, that the agreed line is not the true line, or, in other words, if there be not an actual or believed uncertainty as to the true line." (*Clapp* v. *Churchill,* 164 Cal. 741, [130 Pac. 1061].)

Either McMahon, senior or junior, had only to refer to his deed to ascertain that he was entitled to only twenty-three feet and six inches instead of twenty-six feet and a fraction included within the inclosure. He must be presumed to have been familiar with the terms of the instrument that constituted his muniment of title. If he did not actually know the extent of his property he had the means of knowledge within reach and he would not be heard to say that the fence was located upon the *accepted* division line.

"Where there is an acquiescence in a wrong boundary, when the true boundary may be ascertained by the deed, it is treated, both in law and equity, as a *mistake,* and neither party is estopped from claiming to the true line. The boundary is considered definite and certain when by survey it can be made certain from the deed." (*Hartung* v. *Witte,* 59 Wis. 285, [18 N. W. 175].)

"Where a boundary fence was built on what the parties supposed was the true line, and there was no dispute, and it was not known that there was any uncertainty, an establishment of the boundary by implied consent and acquiescence was not shown." (*Peters* v. *Reichenbach,* 114 Wis. 209, [90 N. W. 184].)

It is further contended by respondent that whatever title McMahon, Senior, may have acquired is of no consequence since appellant has furnished no evidence that he has succeeded to that interest. In this connection it is claimed that since the father left a will, and the decree of distribution in the estate does not purport to distribute the controverted strip

and makes no reference to it, and there having been no further administration of the father's estate as provided in section 1698 of the Code of Civil Procedure, the said decree of distribution is the only proof that could be offered that appellant has succeeded to his father's interest and therefore no privity is shown.

We deem it unnecessary, however, to consider this phase of the controversy.

Appellant's specification as to the insufficiency of the evidence to support the finding as to the rental value of $37.50 per month may be passed by since no part of it was allowed in the judgment.

Attention is called to certain findings that relate to contemplated improvements upon plaintiff's lot, and it is contended that at the time of the trial the situation had changed so that said findings did not present the truth. But the court properly found the facts as they existed at the time the complaint was filed.

The same suggestion may be made as to the criticism that "the finding that defendant entered into possession within one year last past, is at a time subsequent to the filing of the complaint."

That the market value of plaintiff's land would be depreciated by the excision and loss of the three-foot strip would seem to require no direct evidence. It is indeed quite manifest from the circumstances appearing in the case.

Finding 29 deals with the *actual* occupancy of the disputed strip and it is a fair inference from the evidence that neither the residence of appellant nor of his father was constructed "up to said line." At any rate, this finding and some others attacked by appellant are entirely immaterial as they could not have altered the judgment if they had been in favor of appellant. (*Witcher* v. *Conklin,* 84 Cal. 499, [24 Pac. 302].)

Likewise, the contention that the court failed to find upon certain averments of the answer does not demand specific consideration for the reason that certain findings of the court, which are supported by the evidence, control and uphold the judgment. (*Southern Pac. Co.* v. *Dufour,* 95 Cal. 615, [19 L. R. A. 92, 30 Pac. 783].)

The judgment is, substantially, "That ever since the 21st day of March, 1883, plaintiff has been and now is the owner

and entitled to the possession of that certain lot," describing it; that defendant "has no right, title or interest whatever in or to said lot . . . nor any right to the occupation, use or control thereof or any portion thereof," nor any right to maintain upon plaintiff's land any improvement whatever or to enter upon plaintiff's land for any purpose; that plaintiff is entitled to remove any structure that may have been placed upon her land; that defendant be enjoined from asserting any right, title, or interest in or to said land or any portion thereof and that any structure placed upon said land by defendant is a nuisance and should be abated and that defendant be required to abate the nuisance at his own cost and that if he fails to do so for the period of thirty days that the same may be removed by the sheriff at the cost of defendant, to be taxed and fixed by the court, as costs to be added to the judgment, and that in case of defendant's failure to so remove the obstruction, plaintiff is to be allowed the reasonable value of the use and occupation of the disputed strip until the time when plaintiff recovers possession, said amount to be fixed by the court upon notice to defendant.

The vital features of the judgment, therefore, consist in the adjudication of plaintiff's title and right of possession to the disputed strip, of the invalidity of the claim on the part of defendant to any title or interest in or to said land, and of the unlawful occupancy by defendant of said tract and of his illegal interference with the enjoyment of the same by respondent in consequence of structures placed thereon by said appellant. To this the other directions in the judgment are merely incidental and without particular significance.

Looking, then, to the findings, it is discovered that they are full and complete as to the ownership of respondent and her right to the possession of the disputed strip, that defendant without right has entered upon it, placed improvements thereon and continues to maintain them and refuses to vacate the premises, although notified in writing by respondent to do so, and that the action is not barred by the statute of limitations.

These are the essential findings, they control the judgment and they are abundantly supported by the evidence.

Objections are made to several rulings of the court as to the admissibility of evidence, but we find no prejudicial error.

The one of which apparently the most serious complaint is made is the order of the court sustaining an objection to this question asked on the direct examination of appellant: "What effect would it have upon your building if the two feet ten and three-fourths inches were awarded to plaintiff and you were required to remove therefrom?" Appellant claims that "This question should have been allowed upon the theory that a mutual mistake had been made in locating the improvements and boundary fence and would show whether or not it would be inequitable under all the facts of the case to award the disputed strip to plaintiff, and also as tending to estop plaintiff who stood silently by and allowed without protest valuable improvements to be made by defendant."

Under some circumstances, no doubt, such inquiry would be permissible as against the owner of the legal title but the ruling here was correct for the reason that the court was justified in concluding that at the time the improvements were made respondent believed that they *were not* located upon her land and appellant knew or at least had the ready means of knowing that they *were located* upon her land. Indeed, without reciting it in detail, we may say that the evidence, consisting of instruments executed by appellant and declarations and acts made and done by him, amply justify the inference that he knew he had no legal claim to the property in controversy.

It is believed that the conclusion of the trial court is right and the order denying the motion for a new trial is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.