[Civ. No. 2500.    Third Appellate District.—April 17, 1923.]

JOHN WAECHTER et al., Respondents, v. ROBERT BULLARD, Appellant.

[1] EJECTMENT — TITLE — EVIDENCE. — The plaintiff in an action of ejectment, if he relies upon a record or paper title, must show a regular chain from the government, or from some grantor in possession, or from a common source from which each of the litigants claim, and anything short of this is not sufficient to constitute *prima facie* evidence of title.

[2] ID.—INSUFFICIENT EVIDENCE OF TITLE—OCCUPANCY BY DEFENDANT
—EFFECT OF.—Where in an action of ejectment an essential ele-
ment is lacking in the showing upon which plaintiff relies to estab-
lish title, the mere occupancy of the property by defendant is
sufficient to defeat it.

[3] ADVERSE POSSESSION—PAYMENT OF TAXES—WHEN IMMATERIAL.—
Where possession and use were for more than five years prior to
June 1, 1878, at which date the amendment to section 325 of the
Code of Civil Procedure, requiring the payment of taxes as a
condition of adverse possession, was adopted, the question of the
payment of taxes is not material, since the amendment was not
retroactive.

APPEAL from a judgment of the Superior Court of
Sacramento County. Peter J. Shields, Judge. Reversed.

The facts are stated in the opinion of the court.

Charles H. Crocker and J. F. Pullen for Appellant.

George E. Foote for Respondents.

BURNETT, J.—The action is in ejectment and plaintiffs
had judgment, from which the appeal has been taken. The
answer of defendant consists of a specific denial of plaintiffs'
ownership and alleged right of possession, and plea of the
statute of limitations and of title by adverse possession,
and is followed by a cross-complaint seeking to quiet title as
against plaintiffs. The principal point made by appellant
is that the evidence is insufficient to justify the conclusion
of the court in favor of plaintiffs. The land in dispute is
described in the complaint as follows:

"That certain real property situated in the City of Sac-
ramento, County of Sacramento, State of California, known
and described as the East thirty-three (33) inches of the
South one-fourth (S. ¼) of lot number 1, bounded by and
between F and G Streets and 14th and 15th Streets."

[1] The only evidence offered and received on behalf of
plaintiffs is a deed to them from Viola Amsden, a widow,
dated February 11, 1920. In that deed the lot is described
"as South One-Quarter (S.¼) of Lot One (1) bounded by
and between F and G and 14th and 15th Streets" in the city
of Sacramento. After this deed was received in evidence
counsel for plaintiffs said: "I think that will complete my

proof, your honor, as to offering my record of the title."
Plaintiffs thereupon rested and defendant introduced the
testimony of many witnesses, including himself, showing
that he and his predecessors in interest had been in posses-
sion of the disputed strip for nearly sixty years. It seems
clear under the authorities and the rule that prevails in ac-
tions of ejectment that the evidence on behalf of plaintiffs
is insufficient to constitute *prima facie* evidence of title. It
is to be observed that no contention was made that said
Viola Amsden constituted the common source of title, nor
was any evidence offered whatever that at the time of the
execution of the deed she had any interest in the property.
There is nothing to show that she or anyone from whom
she may have derived title was ever in possession of the
property or had any right to such possession. The plain-
tiffs, of course, must rely upon the strength of their own
title, and must show that they have a right superior to that
of defendant. This they failed to do. The plaintiff in an
action of ejectment, if he relies upon a record or paper title,
must show a regular chain from the government, or from
some grantor in possession, or from a common source from
which each of the litigants claims. Anything short of this
is not sufficient to constitute *prima facie* evidence of title.
(9 R. C. L., p. 843.)

In Warvelle on Ejectment, section 235, it is said: "At
common law, to authorize a recovery in ejectment, where
the defendant is in possession, a valid legal title must be
shown. . . . Where the rule, as stated, prevails, the plain-
tiff must establish his legal title, at the time of the demise
laid in the declaration, either upon a connected docu-
mentary chain of evidence, or upon proofs of possession
under a claim of right of sufficient duration to warrant the
conclusion of the existence of such written title."

In 9 Cal. Jur., page 982, we find this statement: "To es-
tablish his right of present possession, the plaintiff in an
action to recover real property must show either title or
prior possession. And if neither the plaintiff nor his
grantors have ever been in possession, it is obvious that he
must rely upon a strict title. In that event, it is incum-
bent upon the plaintiff to prove a proper conveyance from
a party having title or from a party in peaceable possession
claiming title at the time the conveyance was executed, in

which case possession is *prima facie* evidence of title. The title relied upon must, however, be a legal and not merely an equitable title; since it is a settled rule that the holder of a mere equitable title can not bring an action of this kind as against one having the legal title." All the authorities seem to be of the same effect and it is unnecessary to cite or quote further.

Considered most favorably to plaintiffs the case presents a contest for the right of possession between one who has been in actual and undisputed possession for many years and another whose claim arises solely from the naked deed of a stranger. The record thus exhibits a superior right in defendant.

But respondents say: "This case and the facts contained therein are similar to the case and the facts in *Janke* v. *McMahon*, 21 Cal. App. 781 [133 Pac. 21], and it is upon this case and this case alone that plaintiffs and respondents submit their case." The decisive question therein, however, related to the claim of adverse possession. It was admitted by the appellant that the record title was in the respondent and this court said: "Of course, if plaintiff had shown no title there would be significance and potency in the suggestion of appellant that defendant being in possession is entitled to judgment 'regardless of whether he had acquired a prescriptive title by adverse possession or not.' But during all the time in controversy, the record title was in plaintiff or her predecessors in interest and the 'occupancy' referred to in section 1007 of the Civil Code must be construed in connection with the corresponding provisions of the Code of Civil Procedure, and, thus, the conclusion is reached that to overcome the legal title the occupancy must be under a claim of right, or *adverse,* as that term is used in the law." After a review of the evidence and the authorities this court held that the evidence in the trial court was sufficient to support the finding that the possession of the defendant was not under a claim of right and that it could not prevail against the undisputed record title of the plaintiff.

[2] But herein, as we have seen, an essential element is lacking in the showing upon which plaintiffs rely to establish their title, and the mere occupancy by defendant is sufficient to defeat it. There is no doubt of the rule, as quoted

by respondents, "that in every action for the recovery of real property or the possession thereof the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law and the occupancy of the property by any other person is deemed to have been under and in subordination to the legal title unless it appears that the property has been held and possessed adversely to such legal title for five years before the commencement of the action," but as we have seen, plaintiffs are not in position to invoke it.

Moreover, if we assume that the evidence was sufficient as to the record title, then it is at least doubtful whether the finding should not have been in favor of appellant upon the other issue.

[3] It was shown that defendant's father and predecessor in interest went into possession of the lot, including the strip in controversy, in 1862; that it was inclosed by a fence; that the *possession* was open, notorious, continuous, and exclusive, and during all the years down to the present time the father and mother and defendant used the property for the purpose of growing vines and vegetables. The question of the payment of the taxes is not material, since such possession and use were for more than five years prior to June 1, 1878, at which date the amendment to section 325 of the Code of Civil Procedure, requiring the payment of taxes as a condition of adverse possession, was adopted. Said amendment was not retroactive and would not affect any title that may have been acquired prior to its enactment by defendant's predecessor in interest. (*Sharp* v. *Blankenship,* 59 Cal. 288; *Webber* v. *Clarke,* 74 Cal. 11 [15 Pac. 431].)

The only uncertainty relates to the question whether the use and possession were "under a claim of right." This element like other facts may be shown by circumstantial as well as direct evidence, and it must be admitted that the manner in which the lot was used by defendant and by his father and mother would indicate strongly that they intended thereby to assert their ownership of the whole tract. In this connection we quote from defendant's testimony as follows:

"Q. When did you first acquire any title in this property? A. Oh, it was along in 1889, somewheres along there before

1900. . . . Q. Now then, did anybody ever dispute any part, or portion of the property, of your right to the property, especially the south forty feet—thirty-three inches wide, a strip of parallelogram, thirty-three inches wide and forty feet long, on the south of that fence, until these people came into the matter? A. Not till he came there. Q. That is the only dispute you have ever had over it? A. Yes. . . . Q. And have you ever—you or your father, ever had any agreement with *anyone* with reference to that line of fence? A. No, sir. Q. *And you have always claimed the right to that property?* A. Yes, sir. Q. You and your father have at all times paid all taxes that was ever levied against the properties there, have you? A. Yes, sir. Q. Did you ever obtain any permission, you or your father to erect that particular fence? A. No, sir. . . . Q. Now then, why did you put that fence—why did your father put it there, or maintain that fence on that property? A. He went according to the surveyor's stakes and papers.''

The case must, of course, be distinguished from one wherein the claimant admits that there was a question as to the boundary line. Such admission might be regarded as inconsistent with a claim of right to the whole of the land inclosed. But the fact that there may have been a mistake in locating the boundary line does not of itself preclude the claimant from establishing a title by prescription to the whole of the land inclosed if he shows that he actually claimed the whole of it and the other elements of adverse possession exist. The proper view of a situation like that is clearly stated in *Woodward* v. *Faris,* 109 Cal. 12 [41 Pac. 781], as follows:

''Title to land may be acquired by adverse possession for five years within the limits of an inclosure, although the inclosure was made under a mistaken belief as to the boundary of the land, where it is claimed as matter of fact that the fences were upon the line; but if the inclosure was made without claiming that the fences were upon the line, but with the expectation of moving them to the true line when it should be determined, the possession would not be adverse, and the statute would not run.''

But while we think the showing made by the defendant as to this question is quite persuasive and would justify a finding that he has acquired title by prescription, yet in

view of certain statements made by him on the witness-stand that might be regarded as discrediting somewhat the testimony that we have quoted and of the conclusion we have reached as to plaintiffs' failure of proof we leave open for further consideration, if the occasion should arise, the question whether there is or may be any substantial support for the contention that defendant has no such title.

The judgment is reversed.

Hart, J., and Finch, P. J., concurred.